## PENNIMAN and others *vs.* HUDSON.

A delay of seven months, without any explanation of the cause of it, is not due diligence on the part of one who is seeking to make a surety liable on a contract in which " due and legal diligence" on the part of the creditor is expressly required, before the surety shall be made liable; especially where the creditor knew that the original debtor was in failing circumstances.

At least it is such a delay that the court cannot pronounce it due diligence, without submitting the question to a jury.

MOTION by the defendant for a new trial, upon a case. The action was upon a guaranty. The defendant, by an instrument in writing and under seal, dated June 10, 1845, guarantied to a certain extent the payment of debts to be contracted by Garrison & Cutler, for three years from that date, in the purchase of merchandise for their business in Detroit, " and which the sellers should not be able to collect from the said Garrison & Cutler *by due and legal diligence.*" The plaintiffs, on the credit of this guaranty, sold to Garrison & Cutler, in October, 1845, merchandise for their business at Detroit to the amount of $815,75, and took G. & C.'s notes, dated October 30, 1845, at five and seven months, each for half of that amount. The notes were payable at Detroit, and were sent to that place, to the plaintiffs' attorneys, for collection, as they approached maturity. The plaintiffs produced two records of judgment in their favor, in Detroit, each entered April 5, 1847, on a declaration filed March 24, 1847, against Garrison & Cutler, and summons served on them, returnable at April term, 1847; and on an offer of the defendants that judgment be taken for the amount spe-

cified. Each judgment was on one of those notes. A *fi. fa.* was issued April 12, 1847, on each judgment, and returned no goods, &c. On the 5th of July, 1846, and for some days afterwards, Garrison & Cutler were doing business at Detroit, in their own name, and had a considerable stock of goods on hand, worth between $5000 and $10,000. Bird, one of the plaintiffs, was then there, and he and one Easton agreed, or offered to take the stock of Garrison & Cutler, estimating it at $7000; but G. & C. would not let them have the goods, unless all their creditors would discharge them. The refusal was on the last of July or first of August, 1846. The judge charged the jury that the plaintiffs had used due diligence in attempting to collect their debts. The defendant excepted, and the jury having found for the plaintiffs, the defendant moved for a new trial.

*T. Fessenden,* for the plaintiffs.

*E. Fitch Smith,* for the defendant.

*By the Court,* MITCHELL, J. The notes fell due five and seven months from October 30, 1845. That would be on the second of April and June, 1846. The plaintiffs did nothing towards collecting their debts until July, 1846, except sending the notes to their attorneys. They in that month endeavored to settle their claims, and were so far successful as to get the consent of Garrison & Cutler to give their property in payment. But in August, and before this consent was acted on, G. & C. withdrew their consent, unless all the creditors would consent to their discharge. Then the debtors had from $7000 to $10,000 worth of goods on hand, and although embarrassed, were doing business. They had not yet made any assignment.

A creditor acting with the promptness with which a prudent man would attend to his own business, would soon after the knowledge of this refusal, have instituted some proceedings, by suit or negotiation, to collect his demand. But so far as appears, these plaintiffs did nothing whatever from that time until about the 24th of March, 1847; thus allowing seven months,

Penniman *v.* Hudson.

after the promise of Garrison & Cutler to secure their debt, and their refusal to fulfill that promise, before the plaintiffs took any proceedings to collect the debt. This, unexplained, was too great a delay for persons to allow, who meant to make a surety pay the debt if ·they could not collect it. It may be that the April term, 1847, was the first term in Michigan, at which judgment could have been obtained, after August, 1846, or after a reasonable time to wait, from that month; but if that be so, there is no evidence of it. It may be that negotiations were going on, with the prospect of success, and diligently prosecuted to secure the debt, until shortly before the suit was commenced; but that does not appear. It may also be that Garrison & Cutler made an assignment, to secure their guarantors; but that, if it excuses the plaintiffs, should be made to appear by them. A delay for seven months, without any explanation of the cause of it, is not due diligence on the part of one who is seeking to make a surety liable on a contract in which due diligence on the part of the creditor was expressly required, before the surety should be made liable, especially where (as in this case) the plaintiffs knew that the original debtor was in a tottering condition. At least it is such delay that the court cannot pronounce it due diligence, without submitting it to a jury. Ch. J. Spencer said, in *Moakley* v. *Riggs*, (19 *John.* 72,) that a term should not have elapsed after a note fell due, before a suit should be commenced on it, where the guarantor was to be liable only "after due course of law." This was said to be a dictum. If it be so, it shows that so long a delay as seven months needs some explanation. In *Kies* v. *Tifft*, (1 *Cowen*, 98,) it was agreed that if the money to become due on a mortgage assigned to Tifft should not be paid when it fell due, then the defendants were not to be liable on their note to the plaintiff *until* the money should be collected *by due course of law* taken on the mortgage; that is, the defendants should not be liable until *they* could by *due* cause of law collect the amount to be due on the mortgage. The mortgage fell due February 1, 1820, and was not paid, and no proceedings were taken by the *defendants* to collect it, even down to the 8th of August 1820, although they were *re-*

*quested* to proceed, by the plaintiff. The court held the delay so great, *especially* under these circumstances, that the defendants were liable on the note; in other words, that a delay of six months was not in that case, due diligence. They also said that the defendant ought not to have allowed a term to pass, after the money fell due, without a prosecution.

These two cases were reviewed by Woodworth, J. in *Thomas v. Woods*, (4 *Cowen*, 183,) and he held that the limitation of a term was a mere dictum in those cases; and that the question of due diligence must depend on the circumstances of each case; and that if no injury has resulted from allowing the time to elapse, it may be regarded as sufficient diligence. He says, "If there is sufficient ground for deeming the difference of time immaterial, then there is no want of due diligence in permitting the May term to pass, without a suit." Justice Sutherland also speaks of the expressions as to a term, in the above two cases, as mere dicta; and Savage, Ch. J. says in *Lamourieux v. Hewit*, (5 *Wend.* 307,) that the limitation of a term was recognized in *Kies* v. *Tifft*, and perhaps he is to be understood to say that the objection of delay is not applicable when the original debtor is insolvent. He refers to *Thomas* v. *Woods*.

Justice Sill, in a review of the cases, in *Burt* v. *Horner*, (5 *Barb*, 506, 7,) showing that they all recognize the principle that due diligence is required, adds, "but when there has been delay, the courts have in some instances held it to be *consistent* (under the circumstances disclosed,) *with reasonable diligence*, and hence that there was a performance of the condition precedent." See also the dissenting opinion of Willard, J. in *Van Derveer* v. *Wright*, (6 *Barb*, 552.)

A new trial must be granted; costs to abide the event.

[NEW-YORK GENERAL TERM, February 7, 1853. *Edwards, Mitchell* and *Roosevelt*, Justices.]