# Cases

# FOURTH DEPARTMENT

AT

# GENERAL TERM,

## April, 1878.

---

WILLIAM F. EDINGTON AND ABRAM SLEEPER, RESPOND-
ENTS. *v.* THE ÆTNA LIFE INSURANCE COMPANY,
APPELLANT.

*Policy of insurance — assignment of — declarations of assignor — not admissible
against assignee — Physicians cannot disclose facts acquired while attending
patients — waiver of this point — right of assignee so to do — Words — submission
of meaning of to jury — Application to company — what constitutes — Discrep-
ancies in answer — when immaterial.*

The defendant issued a policy of insurance upon the life of one D., payable
to the assured, his executors, administrators or assigns. D. transferred his
interest in the policy to plaintiff for the sum of $1,000, reserving the right to
redeem, on repaying said sum with interest in one year, and, during his life,
but in case of his death before redeeming, the transfer to be absolute. In an
action by plaintiff to recover the amount of the policy, after D.'s death, it was
claimed by the defendant that the agreement was against public policy, and
fraudulent as to the heirs and next of kin of the assured, as it tended to
deprive them of the right to redeem. *Held*, that the agreement was valid, and
should be sustained.

*Semble*, that in an action by the assignee of a policy of insurance, issued upon
the life of his assignor, to recover the amount thereof, declarations made by
the assignor are not admissible in evidence against the plaintiff, whether made
before or after the issuing of the policy.

In no event can declarations made after the issuing of the policy be admitted.

Upon the trial, Dr. E., who had testified that he had treated D. and prescribed
for him in the spring and summer of 1862, was asked, "What did you do by way
of treatment to him?" "Was he cured when he left your hands?" "Was

he better or worse after you ceased treating him ?" *Held*, that the court properly refused to allow the questions to be answered, as they were forbidden by the statute (2 R. S., 406, § 73) prohibiting a physician from disclosing information acquired by him in attending a patient professionally.

He was then asked whether, in May, 1867, in his opinion, "D. was in good health, and of sound body, and one who usually enjoyed good health ?" *Held*, that the question was objectionable, as the opinion of the witness must necessarily be based, in part at least, on the information acquired by him in his professional attendance on D.

A physician was called who testified that he had examined D. for insurance in the Phœnix Life Insurance Company about the time of the second application in this case, and passed him as insurable. Upon cross-examination, he was asked if he would have recommended D. for insurance if the latter had informed witness that he had been treated by any of the five physicians who had attended him for a disease which he was unwilling to disclose, or that he had been under treatment for five years. *Held*, that the opinion of the witness as to what he would have done had those statements been made to him was of no importance, and was properly rejected.

The prohibition imposed by the statute upon a physician, preventing him from disclosing information acquired by him in attending upon a patient professionally, is for the benefit of the patient, and may be waived by him or by his assignee, nor is this privilege of the assignee affected by the death of his assignor.

To the question in the application, "Is the party subject to dyspepsia, dysentery or diarrhœa ?" D. answered "No." Upon the trial the court charged the jury : "You will say what is the fair meaning of the words 'subject to.' Does it mean a single occurrence of a disease — a single attack — or does it mean that one has been habitually attacked, or that he is under the possession of the disease ? * * * Looking at this question, it is for you to say whether he was subject to dyspepsia, dysentery or diarrhœa." *Held*, that, as submitted, there was no error in allowing the jury to determine the meaning of the words "subject to."

To the question in the application, "Has any application been made to this or any other company for assurance on the life of the party; if so, with what result ?" D. answered, "Yes, and always successful." It appeared that, in 1862 or 1863, he handed to the agent of a foreign insurance company an application for insurance; that the agent said he did not think the company would take him; that, upon D.'s request, he handed the application to the examiner for the company, who was then D.'s physician; that the agent subsequently told D. that the examiner said he could not pass him, and that the examination was a farce and an unnecessary expense to put the company to; and there the matter dropped. The court left it for the jury to say whether or not D.'s answer was a truthful one. *Held*, that it did not appear that an application was made to the company; that the application was not even made to the agent to be forwarded to the company; that the application was never completed.

One question was: "Has the party had, during the last seven years, any severe sickness or disease ; if so, state the particulars and the names of the attending

physicians, or who was consulted and prescribed?" The answer in the first application was: "Has had nervous difficulty and diarrhœa; C. H. Carpenter, Geneva, N. Y.;" in the second it was "No." The court left it to the jury to determine whether or not the nervous difficulty or diarrhœa was, in fact, a severe sickness or disease. *Held*, that this was proper; that if the nervousness and diarrhœa were not, in fact, severe diseases; the discrepancy between the two answers was not material.

The question who is an attending physician under 2 Revised Statutes (406, § 73), discussed.

Appeal from an order denying a motion for a new trial made upon the minutes of the judge, after verdict rendered in favor of the plaintiffs at the Ontario Circuit.

This action was brought to recover the amount of two policies of insurance for $7,000, issued by the defendant on the life of William F. Diefendorf, of Geneva, New York, title to which was claimed by the plaintiffs by virtue of an assignment bearing date October, 18, 1870. The policies were payable to the said assured, his executors, administrators or assigns, within ninety days after due notice and proof of the death of the said W. F. Diefendorf, or if the said W. F. Diefendorf should survive twenty-five years, then the amount insured was to be paid to him; and, in either case, all indebtedness of the party to the company should be deducted from the sum insured.

The answer of the defendant alleged that when the policies were obtained by Diefendorf, the assured, he made certain false representations and warranties, and concealed certain material facts in reference to his then, and previous health and physical condition, and in reference to other material matters, about which he was asked in certain questions then propounded to him.

The assignment under which the plaintiffs claimed expressed a consideration of $1,000, and provided that Diefendorf, the assured, might redeem the policies at any time during one year; and also provided that, in case Diefendorf should die within the year, the assignment should become absolute. The first policy bore date June 18, 1867, and insured Diefendorf's life in the sum of $2,000. The second policy was dated May 29, 1868, and the application on which it was issued was dated May 13, 1868.

In the course of the charge, the court said: "It is claimed, also, that in answer to question No. 13, in that application, he answered

untruly. That question is: ' Is the party subject to dyspepsia, dysentery or diarrhœa ?' To this question he answered 'No.' That will lead you to inquire what is meant by the term 'subject to.' Upon this subject, let me say that the words used in these questions are to be understood as men generally would understand them in common use. The usual meaning of the terms is to be given to them. You are to understand them as usually employed and understood. You will say, what is the fair meaning of the words ' subject to ?' Does it mean a single occurrence of a disease — a single attack — or does it mean that one has been habitually attacked, that he is under the possession of the disease ? You say a man is subject to a cough, does it mean that he has had it once or twice, or does it mean that it has taken possession of him substantially ? Looking at this question, it is for you to say whether he was subject to dyspepsia, dysentery or diarrhœa. If you shall find that he was not subject to either of these diseases, then that question was answered truly, and the defense to it is not established; but if you find that he was subject to one or more of the diseases therein named at the time he made the answer, the defense is established upon that ground."

*E. G. Lapham*, for the appellant.

*G. F. Danforth*, for the respondents.

SMITH, J.:

The counsel for the appellant contends that the assignment of the policies is void. By the terms of the assignment, Diefendorf transferred to the plaintiffs his interest in the policies in consideration of the sum of $1,000, he reserving the right to redeeem the same on repaying the said sum with interest, in one year and during his life, but in case of his death before redeeming, the transfer to be absolute. It is claimed that the provision rendering the assignment absolute in case the assured should die without redeeming, is against public policy, and is also fraudulent as against the heirs of the assured, and is designed to deprive them of the right to redeem. It is difficult to discover any reason for holding that the assignment is not valid and operative according to its terms. The policies,

by their terms, were assignable at the pleasure of the insured; they imposed no limitation upon the power of assignment; they vested no right or preference in the legal representatives or heirs of the assured; and in the terms and purpose of the assignment itself there is nothing unlawful. We think that the assignment was good in law, and the assignor having died within the year without redeeming, that the title to the policies, and the right to recover the moneys due upon them vested absolutely in the plaintiffs.

Numerous questions are presented by exceptions taken by the defendant's counsel to rulings of the trial court upon the admissibility of certain items of testimony. They will be briefly considered, so far as is necessary.

1. The case states that the defendant's counsel offered in evidence the deposition of George Proudfit, taken in Michigan, under a commission; that the counsel for the plaintiffs objected to a part of the deposition, described in the case as that part of the answer to the fifth interrogatory which purported to relate to the declarations or statements of Diefendorf, and that it was excluded. The case does not set forth the portion of the deposition which was excluded, but its substance is perhaps to be inferred from an offer made by the defendant's counsel immediately after its exclusion, " to prove from the testimony of Proudfit, in connection with the fact that Diefendorf was in feeble health and debilitated, and confined to his bed upon one or two occasions during the years 1866, 1867 and 1868, declarations made by him to the witness, explaining his sickness or physical condition." To a question put by the court when the offer was made, the counsel replied that he simply meant to offer to read the whole of the answer to the interrogatory, and the offer was excluded. Assuming that the excluded part of the answer was to the effect stated in the offer above transcribed from the case, we think it was properly shut out as mere hearsay. The declarations of Diefendorf were not admissible against the plaintiffs, who, although deriving their title from him, were not identified with him in interest, they being purchasers for value. (*Paige* v. *Cagwin*, 7 Hill, 361.) It is immaterial that the policies were not negotiable. (*Id.*; *Booth* v. *Swezey*, 4 Seld., 276.) And the fact that the party making the declarations is since deceased, makes no difference. (*Stark* v. *Boswell*, 6 Hill, 405; *Tousley* v. *Barry*, 16 N. Y., 497.)

In general, to make the declarations of a person not a party to the suit, competent evidence, there must be an identity of interest between such person and the party against whom the declarations are offered. But there is no such identity of interest between parties occupying the relation of vendor and purchaser. Were this suit brought by the next of kin or the legal representatives of Diefendorf, the case would be different. It is urged, however, by the appellant's counsel that in the circumstances stated in the offer, the declarations being explanatory of the speaker's bodily ailments, were admissible as *res gestœ*. Upon this point we are referred to the case of *Swift* v. *Massachusetts Mutual Life Insurance Company* (63 N. Y., 186). That case is clearly distinguishable from the present. There, the plaintiff had taken the policy sued on to herself, on the life of her husband, for her own benefit. The decision in that case seems to proceed upon the ground that the legal relation between the policyholder and the insured, was such that the declarations of the latter, within certain limitations, were admissible to show his knowledge of his state of health. The limitations laid down by the court were that only those declarations were admissible which were made prior to the examination of the insured by the agent of the insurer, at a time not too remote from such examination, and in connection with facts or acts exhibiting his state of health. The learned judge who wrote the opinion was careful to state, in accordance with numerous prior decisions, that declarations of the insured made after the contract of insurance had been effected, are not admissible in evidence, for the reason that after the contract of insurance has been effected the subject of insurance has no such relation to the holder of the policy as gives him power to destroy or affect it by unsworn statements. And this suggests another point of difference between Swift's case and the one in hand. There the declarations which were held admissible were made before the contract of insurance was effected; here, for aught that appears in the offer, the declarations were made after both policies in suit were issued. The last policy was dated May 13, 1868, and the declarations would have been within the offer, if made in the subsequent part of the year. The offer was properly excluded. The same considerations apply to the offer to read the answer of the same witness to the sixth interrogatory.

2. The several objections taken to questions put by the defendant's counsel to the witness, Dr. Eastman, who had been the attending physician of Diefendorf, were properly sustained. The statute which prohibits a physician from disclosing information acquired by him in attending a patient professionally (2 R. S., 406, § 73), prevents not only a direct disclosure by him, as a witness, of the prohibited information, but also the giving of any answer which tends in any degree, however remote or indirect, to throw light upon the subject of the prohibition. Upon that subject he is not to furnish any information, however slight. Dr. Eastman testified that he treated Diefendorf and prescribed for him in the spring and summer of 1862. The questions —" What did you do by way of treatment to him ? " " Was he cured when he left your hands ? " " Was he better or worse after you ceased treating him ? " — were obviously within the prohibition of the statute. If answered, they opened the door to an inquiry as to the maladies for which he was treated, and as to his condition while he was in the witness' hands. He was asked whether, in May, 1867, in his opinion, " Diefendorf was in good health and of sound body, and one who usually enjoyed good health." That question was objectionable, for the reason that whatever opinion the witness had on the subject was necessarily based, in part at least, on the information acquired by him in his professional attendance on Diefendorf. The objection was not obviated by the succeeding question, which called for the witness' opinion on the same subject, excluding, in terms, any knowledge or information that he obtained while treating Diefendorf. (See *Edington* v. *M. Life Ins. Co.*, 67 N. Y., 185.) It was impossible for the witness to exclude such information from his mind in forming an opinion, and if it were possible, the opinion would have been based upon partial information, and would have been of no value as evidence. It by no means follows from these views, as appellant's counsel suggests, that a physican who has once attended a patient is forever prohibited from giving a medical opinion as to the subsequent condition of the patient, derived wholly from observation. Such a result would hardly be claimed in a case where the malady for which the patient was treated by the witness was cured, and had no effect upon or connection with his subsequent condition at the time respecting which the opinion was called for. But, in this case,

the theory of the defense at the trial is understood to have been that whatever malady Diefendorf was treated for by the witness in 1862 continued to afflict him in May, 1867, and to the time of his death. In that view of the case, it is difficult to see how the witness could have expressed an opinion respecting the health of Diefendorf in 1867 without being influenced, more or less, by what he learned of his condition during his attendance on him in 1862. The questions put to Dr. Eastman as to the cause of chronic diarrhœa and rheumatism, and the effect of those diseases, were also properly excluded. They were immaterial, unless they were pertinent to the issue as to whether Diefendorf had either of the diseases referred to, in which case, as we have seen, the testimony was within the prohibition of the statute.

3. A point is made that the court erred in excluding the testimony of the witness Spalsbury, a connection of Diefendorf by marriage, and well acquainted with him, a physician, but not the attending physician of Diefendorf, as to his knowledge and opinion of the physical condition of Diefendorf prior to the insurance, and within the limit of seven years named in the applications. The only question of that nature to which an objection was sustained, so far as I have discovered in reading the entire testimony of the witness, was one in which the witness was asked whether, in his opinion, Diefendorf was a healthy man in 1862, when witness first knew him. I gather from the case that the question was objected to on the ground that the time was too remote. It was five and six years before the respective applications. Obviously, if the witness had no knowledge of the state of Diefendorf's health subsequently to that time, his opinion was of little value ; and, in view of all the testimony produced by the defendant as to the health of the assured in later years, it can hardly be said that the defendant was prejudiced by the ruling, even if it was erroneous. For instance, the same witness, Spalsbury, subsequently testified, on defendant's examination, that after 1862 Diefendorf lost in health from year to year ; that his health was not as good in 1865 as in 1862, that in 1862 his voice was low, and it was always low when he knew him. The suggestion that the applications cover a period of seven years, probably has reference to the question, "Has the party had, during the last seven years, any severe sickness or disease ?" The question

to Spalsbury was not whether the assured had a severe sickness in 1862, but whether, in the opinion of the witness, he was then a healthy man? We are of the opinion that if the ruling was erroneous, substantial justice does not require that a new trial should be granted on account of it, and the error should be disregarded. (Code of Civil Procedure, § 1003.)

4. The defendant's counsel called as a witness Dr. Picot, who certified in the proofs of death submitted by the plaintiffs to the insurance company, that the assured died of nervous apoplexy; and asked him to state what causes may produce nervous apoplexy. The testimony was excluded. By the witness, Dr. Swart, the defendant's counsel offered to prove that death by nervous apoplexy is the result of some disease or diseases of long standing, and not of a sudden cause. An objection to the offer was sustained. We think these rulings were correct. So far as can be learned from the question and offer, the testimony was immaterial. It was not proposed to show that the death of Diefendorf or the disorder which was certified to have produced it, was the result of any disease covered by the representations of the assured, and within the issues made by the answer.

5. The same remark is applicable to the question put to the witness Tennant, calling on him to state whether he knew any thing of Diefendorf's limbs swelling in 1870, or at any time? It does not appear to have been material to the issue.

6. The witness, Goodall, testified on direct examination by the plaintiffs, that he examined Diefendorf for insurance in the Phœnix Life Insurance Company about the time of the second application in this case, and passed him as properly insurable. On cross-examination he was asked whether he would have recommended Diefendorf for insurance if the latter had informed witness that he had been treated by any of the five physicians who had attended him for a disease which he was unwilling to disclose, or that he had been under treatment for five years? Two other similar questions were put to the same witness, and one to the witness, Dr. Clark. An objection to each question was sustained. We think the testimony was incompetent. It was of no importance to know what the action of the witness would have been in the hypothetical case stated, or what, in their opinion, would have been a good or bad risk for an

insurance company to take under the supposed state of facts. Similar testimony was held to be incompetent in *Rawls* v. *American Mutual Life Insurance Company* (27 N. Y., 282, *per* Wright, J., p. 293), and cases cited by him.

7. It is claimed that the court erred in allowing the plaintiffs' witness, Dr. Simmons, a physician, to testify to the opinion he formed upon an examination of Diefendorf, at his request. The claim is based upon the idea that the information the witness acquired was privileged by the statute already referred to. We are of the opinion that the transaction between the witness and Diefendorf was not within the statute. The witness was the county clerk, and on one occasion when Mr. Diefendorf, who was an attorney, was in the clerk's office, he requested the witness to look at an eruption upon his skin, and the witness did so, on that occasion only, and gratuitously. He examined his face and back, and at the trial expressed an opinion as to the character and cause of the eruption. Undoubtedly, as he testified, he made use of his knowledge and learning as a physician in forming his opinion, and it was in the confidence that he possessed medical skill that Diefendorf requested his examination; but it can hardly be said that he attended Diefendorf as a patient, in a professional character, certainly not that the information acquired by him was to enable him to prescribe for him as a physician. It does not appear that any prescription was made or asked for. Ordinarily, perhaps, it is to be presumed, in the absence of proof to the contrary, that when a physician attends a person as a patient, in a professional character, he does so for the purpose of prescribing for him, but here we think the presumption does not arise, for the reason that the relation of physician and patient contemplated by the statute did not exist. Aside from this, the seal of confidence impressed by the statute is for the benefit of the patient, and may be removed by him, or with his consent. (*Johnson* v. *Johnson*, 14 Wend., 637, per Savage, Ch. J., 641.) And, as was said by Miller, J., speaking for the Court of Appeals, in the case of *Edington* v. *Mutual Life Insurance Company* (67 N. Y., 185), no valid reason is shown why an assignee does not stand in the same position, in this respect, as the original party, and the decease of the latter cannot affect the right of the former to assert this privilege.

8. The witness, Carpenter, testified, on direct-examination by the defendant, that, as a physician, he treated Diefendorf at different times from 1866 to 1868. He also gave the dates of his charges from his books, and stated that some of them were for advice merely. On his cross-examination, he was asked whether many of his charges were for advice simply. The question was objected to as immaterial, and the objection was overruled. It is now insisted that the question called for testimony that was not only immaterial, but was privileged by the statute. That it was not immaterial is obvious for it was within the range of a strict cross-examination. The objection that it was privileged was not taken at the trial and cannot be heard on appeal; but if it had been taken it would have been of no avail as the question did not call on the witness to disclose any information acquired by him as an attending physician.

Several exceptions to the charge, and to certain refusals to charge as requested, remain to be considered.

1. It is insisted by the appellant's counsel that the court erred in submitting to the jury to say what was the meaning of the words "subject to" in that part of the applications in which Diefendorf answered "no" to the question whether he was subject to dyspepsia, dysentery or diarrhœa. The ground taken is that the question was one of interpretation of the contract, and was for the court and not for the jury. It is by no means certain that it was erroneous to submit to the jury to say what the parties intended by the words "subject to." In *Swift* v. *Massachusetts Mutual Life Insurance Company* (2 N. Y. S. C. [T. & C.], 302) it was held that it was for the jury to determine what construction should be put upon the word "unknown" disease inserted in an application for insurance, whether as referring to the knowledge of the party or of everybody. In *Penniman* v. *Hudson* (14 Barb., 579), where there was no conflict of evidence, it was said to be for the jury to say whether a party had used "due and legal diligence" within the meaning of his contract.

But it appears from the whole charge that the jury were instructed, in effect, that if Diefendorf had been attacked by either of the diseases named, not once or twice only but habitually, if the disease had taken possession of him substantially, then he was subject to it. That instruction was, in substance, a construction of the words and it was as favorable to the defendants as they had a right to ask.

2. Another part of the charge urged as erroneous is that which submitted to the jury the question whether Diefendorf answered truly the question whether he had applied to other companies for insurance and with what result. It is insisted that there was no dispute about the facts, and there was no question for the jury. The answer to the question was " yes, and always successful." The witness Windsor, called by the defendant, testified that in 1862 or 1863 he was an agent of the Mutual Benefit Insurance Company of Newark, New Jersey, that Diefendorf presented to him a written application for insurance; that the agent told him he did not think the company would take him, that Diefendorf insisted, and at his request the agent handed the application to the medical examiner of the company, who was Diefendorf's physician in 1862; that the agent subsequently informed Diefendorf that the examiner said he could not pass him, and the examination was a farce and an unnecessary expense to put the company to, and that he was uninsurable, and there the matter dropped. It is insisted that this testimony, which was uncontradicted, showed clearly that Diefendorf's answer was untruthful. The question in the application was this : " Has any application been made to this or any other company for assurance on the life of the party, if so, with what result?" The judge submitted it to the jury to say whether, within the fair meaning of the question, there could be said to have been an application to the New Jersey company for insurance, the application never having been presented to the company, or filled out by the exam iner for presentation, or used in any manner, except as above stated. Of that disposition of the matter the defendant certainly ought not to complain. It is probably correct to say there was no question for the jury, but it is so because there was no proof that an application had been made to the New Jersey company. The application could only be made to the home office. The local agent could receive it for transmission to the office of the company by whom it was to be passed upon, but the delivery of it to him for that purpose would not have been an application to the company for insurance, and . it was not delivered to him for any purpose. It was never, in fact, completed, and the idea of furthering it was abandoned. If Diefendorf had sworn to the answer in the application to the defendant, on which this discussion arises, could perjury have

been assigned upon it, under the circumstances testified to by Windsor? It seems not, clearly, and if so, the judge might have held properly, as matter of law, that the transaction in question constituted no defense, but his failure to do so did not harm the defendant.

3. The court submitted to the jury the question whether the answers of Diefendorf in both applications were true. Each of the applications contained this question (numbered 12): " Has the party had inflammatory rheumatism?" The answer in the first application was: " Once, years ago (bad);" in the second, " No." Each application contained also this question (numbered 16): " Has the party had, during the last seven years, any severe sickness or disease; if so, state the particulars and the name of the attending physician, or who was consulted and prescribed?" The answer in the first application was: "Has had nervous difficulty and diarrhœa; C. H. Carpenter, Geneva, N. Y.;" in the second, " No."

In regard to the answer to the twelfth question in the second application, the court instructed the jury to find whether it was satisfactorily proved that the applicant had had inflammatory rheumatism. To the submission of that question no exception was taken, and it is plain there was no ground for an exception. The statement in the first application, that he had once had inflammatory rheumatism, was not conclusive against the plaintiff's right to recover on the second policy. It was but an item of evidence to be weighed by the jury, and if, upon the whole case. they were satisfied that Diefendorf had never had the disease mentioned, the statement did not affect the validity of the latter policy.

Respecting the answers to the sixteenth interrogatory, the jury were instructed to find whether the nervous difficulty or diarrhœa stated in the first application in fact amounted to a severe illness, the question put to the applicant being whether he had had any severe sickness or disease. The jury must be presumed to have found that the attacks of illness above mentioned were not severe, and if their verdict is warranted by the evidence, the apparent discrepancy between the two statements is of no importance.

4. The defendant's counsel claimed, that the second application gave an untruthful answer to the question, " name the residence of the family physician of the party, or of one whom he had usually

employed or consulted." The answer was, "C. H. Carpenter, N. Y." The defendant's counsel contended that Dr. Picot, of Geneva, was shown to have been the attending physician at the time. The court charged that it was for the jury to say whether the applicant was bound under that question to name all the physicians who might have treated him, or whether the question called for his family physician or one who was usually employed by him. The court further charged that if it only called for the latter, and Dr. Carpenter was the one, the answer was truthful; but if the question called for all the physicians who had treated him, the answer was not truthful.

It is now objected that this part of the charge submitted to the jury to determine the meaning of the sixteenth question in the application was erroneous. The exception taken at the trial did not specify that objection. The exception was general to the whole of this part of the charge. The part of the charge so excepted to embraced several propositions, some of which were unexceptionable, and consequently an objection to one of them only is not now available.

Of the exceptions taken to the refusals to charge as requested it is sufficient to say that all the requests seem to be fully covered by the charge, except the sixth and seventh, and they, in our judgment, were properly refused. The sixth called for an instruction to the effect that the omission of the plaintiffs to prove by the attending physician the nature of the diseases for which he treated Diefendorf raised a presumption against them in that respect. The statute which made confidential the disclosures to the physician is an answer to that request. By the seventh request the court was asked to charge the jury that the plaintiffs, as to their cause of action on the second policy, were bound by the answers of Dr. Carpenter, the medical examiner, that Diefendorf had had neuralgia. In the medical certificate of May, 1867, the question is put to the examiner, "Whether any signs of apoplexy, epilepsy, insanity, or any other nervous affection, or of predisposition to them?" The answer was "No; has had neuralgia." In May, 1868, when the second application was made, the same question was put to the same medical examiner and he answered, "None." The question called for an opinion and nothing more. The opinion given in each case was

the same.   The fact that the party had had neuralgia was stated in the answer in the first case and not in the second.   But whatever effect the statement had on the rights of the assured or of the plaintiffs it was, at most, but an item of evidence to be weighed by the jury and was not conclusive.

It is urged that the verdict is against the weight of evidence, and that the judge who presided at the trial erred in denying the motion to set it aside on that ground.   While the testimony shows, without dispute, that Diefendorf was for many years in a state of health by no means sound, yet it was for the jury to say, upon all the evidence, whether any of the facts existed which were alleged in the answer as matter of defense.   We see no ground for disturbing their verdict.

The order denying a new trial should be affirmed.

MULLIN, P. J., and TALCOTT, J., concurred.

Order denying new trial affirmed.