New York County.—Hon. D. C. CALVIN, Surrogate.— April, 1881.

## Pearsall v. Elmer.

*In the matter of the probate of a paper propounded as a codicil to the last will of* Samuel Wood, *deceased.*

Upon the hearing of a contested application for the probate of a codicil to a will, a witness, who was an attorney, was asked by contestants to state a conversation had between him and decedent, relating to the preparation by him, for decedent, of a codicil not executed, subsequently to the execution of the instrument propounded. *Held,* privileged, under Code Civ. Pro., § 835, and excluded.

*It seems,* that the rule would be otherwise, as to conversations, etc., relating to the paper presented for probate.

The protection, afforded to a client by the section of the Code cited, does

not cease with his death, but may be invoked by his executor, on proceedings for probate, before admission of the will.

In the interpretation of a statute, it is the duty of the court to consider the object of its enactment, and the mischief which would result from a literal construction.

Staunton *v.* Parker, 19 *Hun*, 55,—criticised.

THIS was a hearing of an objection to the admission of testimony upon an application for probate of a codicil to a will.

Benjamin F. Blair, an attorney, a witness called for contestants Sylvester W. Pearsall and others, having testified that, some time in 1875, subsequently to the execution of the codicil offered for probate, he called, by appointment, upon decedent, in reference to the preparation of a new codicil to his will, not executed, was asked to state a conversation which then occurred between him and decedent on that subject. This testimony was objected to by counsel for the opposing party, William Elmer, named as executor in the codicil propounded, as a communication made by decedent, as witness's client, in the course of his professional employment, and inadmissible under Code Civ. Pro., § 835.

JOSEPH H. CHOATE, *for objector.*

WILLIAM FULLERTON, *opposed.*

THE SURROGATE.—In Allen *v.* Public Administrator (1 *Brad.*, 221), Judge BRADFORD held that the provision of the Revised Statutes, that a physician should not be allowed to disclose any information which he had acquired in attending any patient in a professional character, which information was necessary to enable him to prescribe for such patient, was not applicable to the physician of a deceased person in a testamentary case,

concerning the probate of the will of such decedent ; that the prohibition was a personal privilege to the party, which might be waived, and that, if such privilege did not die with the party, still, before administration in a testamentary proceeding, there was no one competent to assert the privilege in exclusion of testimony necessary to the determination of what constitutes the last will and testament of the deceased. On appeal to the court of appeals, the decision of the Surrogate, as to the validity of the will, was sustained, and his able opinion contained in the case fully concurred in (*Selden's Notes*, 93).

In Whiting *v.* Barney (30 *N. Y.*, 330), after a careful consideration of the authorities, and the reason of the rule, it was held, that the rule which protects the professional communications of clients to their attorneys or counsel, from disclosure, could only be held to extend to such communications as had relation to some suit or other judicial proceeding, either existing or anticipated ; and that when both parties were present, when the communication was made by one to his attorney, there was nothing confidential in the communication ; and the cases, holding that any communications by a client to his attorney, though they did not relate to existing or prospective judicial proceedings, were privileged, were considered by the court in that case, and disapproved. In Hebbard *v.* Haughian (70 *N. Y.*, 54), it was held that an attorney employed to draw a deed was competent to testify to the directions received by him from the parties, as to the transaction between them at the time, as they were not communicated to him as an attorney, to enable him to perform his duties to the client. See Coveney *v.* Tannahill, 1 *Hill*, 33.

It will be observed that the section now existing for-
bids the disclosure of a communication made by a client
to his attorney, or his advice given thereon in the course
of his professional employment ; and I am of the opinion
that the prohibition is broad enough to cover all cases
of professional employment, without regard to the ques-
tion whether that employment related to some suit or
other judicial proceeding, either existing or anticipated,
as limited by the court of appeals, in Whiting v. Barney,
above cited.    In Dilleber v. Home Life Ins. Co. (69 N. Y.,
256), it was held that information as to the condition of
the insured, acquired by a physician while attending
upon him, which was necessary to enable the physician
to prescribe, was prohibited by the statute referred to.
In Edington v. Mutual Life Ins. Co. (67 N. Y., 185),
upon which the latter case was decided, the same princi-
ple was held, and the prohibition was adjudged to
include such knowledge as the physician acquired from
the patient, from statements of others present at the
time, or from his own observation of the patient's symp-
toms and appearance, and that it would be presumed,
from the relationship of the parties, that the information
so imparted was given or obtained for the purpose of
enabling the physician to prescribe for the patient, and
so that it was material.    Judge MILLER reviews the case
of Allen v. Public Administrator, above cited, and its
affirmance in the court of appeals, and says: " Although
the case was heard in the court of appeals, it does not
appear that the point first decided was considered and
determined ;" and the same judge uses this language:
"How far the distinction may be held to exist, where
the question arises upon the probate of a will, and a case

where an assignee has acquired a right, it is not neces-
sary to determine at this time; but the general rule is
well settled, that the protection which the law gives to
communications made in professional confidence, does
not cease upon the death of the party. The seal which
the law fixes upon such communications remains, unless
removed by the party himself or by his legal repre-
sentative."

In Pierson *v.* People (18 *Hun*, 239), Pierson was in-
dicted with Mrs. Withey, for poisoning the latter's hus-
band, and on the trial the physician who had attended
the husband in his professional capacity, after the poison-
ing, was questioned by the counsel for the people as to
the symptoms of the deceased, and as to what he had
learned concerning his condition, while attending him;
this was objected to as privileged; the objection was
overruled, and on appeal the ruling was sustained, the
decision being put upon the ground that there was no
party living that could claim to represent the deceased,
in relation to the subject-matter, unless it were the
people, and that the statute was intended to protect the
patient, and not to shield one charged with murder.

In Staunton *v.* Parker (19 *Hun*, 55), on the probate of
a second codicil to testator's will, appointing one Parker
executor, contestants called a physician who had attended
the deceased for eight years. previous to his decease, to
show that he was incompetent when he executed the cod-
icil. The physician stated that all his knowledge was
obtained from what he had observed while attending him
professionally. The Surrogate rejected the testimony,
but the General Term in the Monroe District held this
was error, and Judge TALCOTT in his opinion stated that,

the patient being dead, the provisions of the section could only be waived by his representative, and that Parker, when it was excluded, was a mere stranger to the estate, and that the heirs-at-law, who offered the testimony, who appeared then to be the only representatives of the deceased in the premises, and succeeded to the rights of the deceased, were competent to waive the provisions of the act. It seems to me impossible to reconcile this decision with that of Edington v. Mutual Life Ins. Co., and Dilleber v. Home Life Ins. Co., above cited. The executor named in a will, before receiving letters, may dispose of sufficient of the estate to pay funeral charges, and may take the necessary steps for the preservation of the estate (2 R. S., 71, § 16). Judge WILLARD well says that, "though the power of the executor before probate is now greatly restricted from that at common law, yet in many respects the probate when granted is said to have relation to the time of the testator's death" (*Willard on Executors*, 147). If the prohibition of the statute is not waived by the death of the client, but may be raised in behalf of an assignee, it would seem to follow that all persons succeeding to the rights of the client might avail themselves of the prohibition.

Suppose a testator's will to be probated, then clearly the devisees and legatees, as well as the executors representing them, would be entitled to object to such disclosure, for the purpose of protecting their title, as well as an assignee. Indeed, is it not quite obvious that, if a client is only to be protected from such disclosures during his life-time, the statute would fall far short of the protection which the client is entitled to? It is urged that the proceedings for probate are only to determine whether

the instrument propounded is decedent's will, and that, therefore, such a disclosure cannot be said to be hostile to the rights or interests of the decedent, or to those succeeding to them. May it not be said, with equal plausibility, that a litigation under an assignment, or conveyance, which only raises the questions as to the genuineness of such assignment or conveyance, would not come under the prohibition? The law regards such an inquiry as hostile to the rights of the assignee or grantee, as well as of the assignor or grantor.

It seems to me that when a will is presented for probate, appearing to have been formally executed, the executor named therein, representing the rights of the estate and the devisees and legatees, succeeds to the rights of the testator, and is entitled to the prohibition of the statute, to prevent any impairment of their rights, and that it would be very illogical to hold that in the interim, before the probate, such rights may be assailed in violation of the statute, with impunity. Again, I am of the opinion that section 836,—which provides for an "express waiver" by the client, renders it impossible that such waiver shall occur, if neither the executor named in the will, nor the legatees under it, represent the decedent until after probate; and it seems to me that, when a will is offered for probate, the legatees and devisees must be held to be entitled to the estate according to the terms of the will, and enabled to take all necessary measures for the protection of those rights through the executor, as though the will were already admitted and their title absolutely vested, and that no presumption against the validity of the instrument should be indulged, as against such rights.

I am of the opinion that all communications by decedent with the witness in the course of his professional employment should be excluded.

In Edington *v.* Ætna Life Ins. Co. (77 *N. Y.*, 564), a physician, who became acquainted with decedent in the winter of 1862, attended him professionally during the next spring and summer, when his professional attendance ceased, but his acquaintance continued till his death. On the trial, he was asked if decedent was cured when he left his hands, in good health, of sound body, and one who usually enjoyed good health in 1867, and whether, in his opinion, excluding any knowledge or information obtained while treating him, and judging from his appearance from that time until 1867, he was in good health, etc. These questions were objected to and excluded, and on appeal such exclusion was held error. Judge EARL, at page 569, says the information excluded under the statute, 2 *R. S.*, 406, § 73, must be such as was necessary to enable him, the physician, to prescribe as a physician, or to do some act as a surgeon. "It is not sufficient to authorize the exclusion that the physician acquired the information while attending his patient, but it must be the necessary information mentioned." It will be observed, however, that the question in that case excluded all knowledge or information obtained while treating decedent, and therefore the language of the learned judge above cited was *obiter*.

In Sloan *v.* New York Central R. R. Co. (45 *N. Y.*, 125), the question was put to the physician, in an action for damages for injury to the plaintiff by the defendant, whether the plaintiff had the venereal disease while

under his care, and under objection was excluded as privileged.

In Pierson *v.* People (79 *N. Y.*, 424), in a case of murder, a physician, who was called to prescribe for the decedent, and who examined and prescribed for him, was asked to state the condition in which he found the decedent at the time, both from his own observation and what decedent told him ; which was objected to under section 834 of the Code, but the objection was overruled, and the court of appeals held the ruling correct, on the ground that there was nothing of a confidential nature in anything he so learned, and that the statute was to protect the patient, not to shield a murderer.

In Grattan *v.* Metropolitan Life Ins. Co. (80 *N. Y.*, 281), a physician who attended the decedent in her last illness, it appearing that he had never visited or seen her except in a professional capacity, was asked if he knew or was able to state the cause of her death ; if he observed the symptoms she exhibited in her sickness; if the symptoms were such as might have been discovered by observation and physical examination, without the aid of any specific statement from the patient, or without being confidentially disclosed by her, or any friend or attendant, or through any private examination ; and also, if the statement of the insured as to the cause of a death was true. These questions were excluded, on objection, and the appellate court held them properly so excluded, and that it was not required, in the first instance, by formal proof, to show that the information was necessary to enable the physician to prescribe, and that the statute includes all knowledge acquired from the patient himself, from the statements of others surrounding him, and

from his observation of his appearance and symptoms. In Pierson v. People, above cited, Judge EARL well says, "but in endeavoring to understand the meaning of words used, much aid is received from a consideration of the mischief to be remedied, or object to be gained by the statute." And in probate cases, I feel constrained to hold with Judge BRADFORD, in Allen v. Public Administrator, above cited, that the statute does not apply to a probate case, in respect to the instructions given by decedent to his attorney for the drawing of his will, and the circumstances connected with its execution, nor to the testimony of an attending physician, where he had occasion to treat the patient at or about the time when the will was executed, where the question of mental capacity is the subject of inquiry ; for to hold otherwise would make the statute, in many cases, a hindrance to the ascertainment of the most important facts bearing upon the issue to be tried ; and I cannot believe that such a construction, as would thus prevent the disclosure of the facts, was in the mind of the legislature when the statute was enacted, or that a construction to that effect would be either just or wise. That his holding is against the letter of the statute cannot be doubted, but in its interpretation it seems to me that it is the duty of the court to take into consideration the object of the statute, and the mischief which would result from its literal construction. The above practice seems to be the safest, until the question shall be settled by the court of appeals. The case of Bacon v. Frisbie (80 N. Y., 394), carries the exclusion of communications between counsel and client to a case where the evidence is offered against a third party, without the assent of the client,

and where the inquiry by the client was hypothetical, and in which there seemed to be serious doubt whether the communication was to the attorney in his professional capacity.

The objection is sustained.