ALLEN *vs.* THE PUBLIC ADMINISTRATOR.

ALLEN *vs.* THE PUBLIC ADMINISTRATOR.

*In the matter of proving the last Will and Testament of*
JOHN HARRISON, *deceased.*

THE provision of the Revised Statutes, that a physician shall not be " allowed
to disclose any information which he may have acquired in attending any
patient in a professional character, and which information was necessary to
enable him to prescribe for such patient," is not applicable to the physician
of a deceased person, in a testamentary cause concerning the probate of
the will of such decedent.

The statute does not establish a general and absolute prohibition of such testi-
mony in all cases ; but secures a personal privilege to the party, not to the
witness, which may be waived.

If such a privilege does not die with the party, still, before administration, in a
testamentary proceeding, there is no one competent to assert the privilege in
exclusion of testimony necessary to the determination of what constitutes
the last will and testament of the deceased.

ALBERT MATHEWS, *for the Executor.*
EDWARD SANDFORD, *for the Public Administrator, and* J. S. THAYER,
*in person.*

THE SURROGATE. The probate of this will being con-
tested on the ground of incapacity and undue influence, an
objection has been taken to the examination of the physi-
cian who attended the deceased about the time the will is
alleged to have been executed. The section of the statute
relied upon to sustain this position, declares that " no person
duly authorized to practise physic or surgery, shall be al-
lowed to disclose any information which he may have ac-
quired in attending any patient in a professional character,
and which information was necessary to enable him to pre-
scribe for such patient as a physician, or to do any act for
him as a surgeon." (2 *R. S.*, 3d ed., *p.* 503, § 92.) At
Common Law, the kind of information referred to in this
section was not privileged (*Phillip's Ev.*, 104 ; 4 *Term R.*,

580), and the rule being new, it has not been the subject of frequent consideration in our Courts. The first objection against its application to testamentary cases, which naturally strikes the mind, is the effect it will have in entirely excluding from every inquiry as to the capacity of a testator, most important and reliable testimony, that of his attending physician. A proposition leading to such a result, and pregnant with so great an injury to the cause of truth and the ends of justice, should be closely scanned before admission. If it be sound, it is remarkable that it has not been urged before in the numerous instances occurring in daily experience, as well in cases of murder in the criminal Courts, as on the probate of wills here. In *Johnson* vs. *Johnson*, 4 *Paige*, 460, the Chancellor held in a divorce case, that the testimony of the physician of the husband, to some material facts, information of which was obtained while attending him professionally, " was illegal and improper, and ought not to have been received." No objection was made to his evidence by the husband, but the physician himself declined in the first instance to testify. The Chancellor regarded the statute not merely as excusing, but as expressly prohibiting a physician from disclosing such information, and therefore rejected his testimony, as having been " obtained in direct violation of this statutory provision." If this be the just interpretation of the law, there can be no doubt the evidence of a physician, of facts embraced under the provisions of the section, must be excluded as well on the probate of the will of the deceased person whom he attended, as in any other controversy ; for the Chancellor puts the exclusion solely on the ground of express statutory prohibition as applicable to the physician. In the case before him, the party interested made no objection to the evidence, and if the privilege of the confidential communication was his, and not the physician's, he therefore waived it : it follows that it was not considered as the privilege of the party, but as a statutory regulation beyond the reach of any waiver, and

imposing a personal duty upon the physician. This decision was reviewed in the Appellate Court (14 *Wend.*, 641 ; *Hewitt* vs. *Prime*), and the decree of the Chancellor reversed ; Chief Justic Savage taking the ground, that no objection having been made by the defendant, who was the person interested in preserving unbroken the confidence he had reposed in his physician, the evidence of the latter was competent. "The privilege," he said, "is undoubtedly that of the party, and not of the witness. It is like the case of an attorney in that respect. If the party waives his privilege, the witness may be examined." (14 *Wend.*, 641 ; see also 21 *Wend.*, 81.) The principle here advanced removes the difficulty. Without holding broadly that a personal privilege dies with the party, *moritur cum persona*, yet where, from the death of the person, there is no one to claim the privilege, its assertion is of necessity excluded, except so far as may depend upon the discretion of the Court. If after probate or administration, personal representatives or devisees might claim the benefit of such a personal privilege in controversies with third persons growing out of his estate, yet before any grant of administration, in a proceeding as it were *in rem* to ascertain what is the last will of the deceased, and who are entitled to succeed to his estate, and represent him, there is in fact no one competent to assert such privilege, even if it survived. It is not the case of an attempted use of confidential intercourse adversely to the interests or rights of a party, or of those who take under him ; or who as representing him might equitably be considered subrogated to his privileges. But the entire object of the investigation is to ascertain what constitutes the will of the deceased, an inquiry in which, if we speculate at all as to the personal privileges of a dead man, and the propriety of extending them beyond the period of his dissolution, we can suppose him to be quite as much interested, as in the preservation of his professional confidence in a physician. Evidence of this kind is almost, if not quite, always pointed to the ca-

pacity of the decedent, and can seldom, if ever, be legitimately led to the injury of character. Doubtless the control of the Court would always be exercised in the restraint of any wanton attempt to blacken the reputation of the deceased; and in view of the relationship of the parties interested in the probate, and the class of questions generally involved in these cases, the occasion will rarely, if ever, occur for the exercise of such a discretionary power. I do not, in the first place, think that testamentary cases are within the reason or the intention of the statute in question; and secondly, if covered by its letter, then the decease of the party puts it beyond possibility to assert the privilege; and if still, from reasons of public policy, the Court should feel bound to extend and keep alive the privilege, that will not be done any further than is consistent with justice and good morals.