WILLIAM F. EDINGTON, Respondent, *v.* THE MUTUAL LIFE
INSURANCE COMPANY OF NEW YORK, Appellant.

Where, in a policy of life insurance, it is stated that the insurance is made
in consideration of the representations in the application, but the appli-
cation is not made a part of the policy, or, in any other manner, referred
to therein, it is not error to admit the policy in evidence, on the part of
the plaintiff, in an action brought upon it, without production of the
application. If any question is raised by defendant thereon, it more
properly belongs to it to introduce the application in evidence.

An error in admitting a policy in evidence without the application,
is cured by the introduction of the application in evidence by the
defendant.

Declarations and admissions of the assured as to his condition of health,
made at a time prior to and remote from the application, and not in
connection with some act or fact showing his state of health, are not
competent, in an action by an assignee upon the policy, for the purpose
of disputing representations in the application.

*Swift* v. *Massachusetts Mutual Life Insurance Company* (63 N. Y., 186)
distinguished.

The provision of the Revised Statutes (2 R. S., 406, § 73) prohibiting a
physician from disclosing any information received by him necessary to
enable him to prescribe for a patient includes not only information
from statements of the patient, but such knowledge as the physician
may acquire from the patient, from statements of others present at the
time, or from his own observation of the patient's symptoms and
appearance. It will be presumed, from the relationship of the parties
that information so imparted was given or obtained for the purpose of
enabling the physician to prescribe for the patient, and so, that it was
material.

Accordingly, *held*, in an action upon a policy of life insurance, that an
offer, upon the part of defendant, to prove by a physician, who had been
consulted professionally by the assured, that prior to the application he
was afflicted with certain diseases for which the witness treated him,
was properly excluded, although the testimony was expressly limited
to what the witness knew, independent of any information given or
statements made by the assured.

*Hewit* v. *Prince* (21 Wend., 79) distinguished.

The right of objecting to the disclosure of such privileged communica-
tions is not limited to the patient and his personal representations, but
an assignee may exercise it, and his right is not affected by the decease
of the patient.

The statutory prohibition above referred to is not repealed by the section

of the Code (§ 390) authorizing the examination of an adverse party as a witness.

An application for insurance contained these questions. "How long since you were attended by any physician? For what diseases? Give name and residence of your usual medical attendant? The assured answered: "Have none; only consulted Dr. C. H. Carpenter now and then for slight ailments and taken his prescriptions." In an action upon the policy it appeared that several other physicians had treated and prescribed for him. *Held,* that the question whether the assured could be charged with an omission to give such information as the questions were intended to elicit, was one of fact for the jury, and that a refusal to allow defendant to go to the jury was error

*Edington* v. *Mutual Life Insurance Company* (5 Hun, 1) reversed on the point last above stated.

(Argued September 18, 1876; decided November 14, 1876.)

APPEAL from judgment of the General Term in the fourth judicial department in favor of plaintiff, entered upon an order denying a motion for a new trial and directing judgment on verdict. (Reported below, 5 Hun, 1.)

This action was brought to recover the amount of four policies of insurance issued by the defendant upon the life of William F. Diefendorf for his benefit, and by him assigned to the plaintiff.

The policies were issued in 1867; the first one in July, 1867. The assured died on the 21st day of March, 1871. All of said policies were issued upon the application of Diefendorf, and each contained the following stipulation and agreement: "If any of the statements or declarations made in the application for this policy, upon the faith of which this policy is issued, shall be found in any respect untrue, then, and in every such case, this policy shall be null and void."

It was stated in each policy that it was issued in consideration of the representations made to the defendant and of the annual premium. Each application contained a declaration, that it was thereby mutually agreed, by and between the assured and the company, that the particulars contained therein, being the answers of the assured to the questions pro-

posed, "formed a part of the contract with the company;" that the said application and the declaration thereto attached should form the basis of the contract between the assured and the said company; that the answers to all of the questions propounded to the friend and physician designated by him were true and correct, and that no intentional omission, concealment or mental reservation had been made of any material facts or circumstances relating to the past or present health, habits or condition of the assured.   And each of said applications contained an agreement "that if any misrepresentations or fraudulent and untrue answers had been made, or if any facts which should have been stated to the defendants have been suppressed therein   *   *   *   that then and in either event the said policy shall become and be null and void."

In the first application Diefendorf was asked "have you ever had any of the following diseases; if so, state which, how recently, and the full particulars:   *   *   *   Rheumatism, and of what nature; disease of the heart, disease of the urinary organs, or of any other vital part?"   His answer was that he had an attack of rheumatism several years ago, about ten years. He was also asked if he ever had any local disease, to which he answered "no;" if his urinary organs were in a healthy state, to which he answered "yes;" and the physician referred to in this application, in answer to the question "are his urinary organs in a healthy condition," answered "yes;" and in answer to the question whether he ever had any disease of those organs, he answered "no."

In the second and third application: Being asked if he ever had any of the following diseases; if so, state which, how recently, and the full particulars, viz: Rheumatism, and of what nature; disease of the urinary organs, or of any other vital part, he answered, in the second "no, except inflammatory rheumatism, about ten years ago, nothing before or since," and in the third "no, except two attacks of inflammatory rheumatism, the last one about ten years ago, of no account in result."   He was also asked if he had ever had any local disease; if so, of what nature?   He answered: in second

"no," and in third "no, except as above stated." He was also asked in both if his urinary organs were in a healthy state; to which he answered "yes;" and the physician referred to by him in both applications, in answer to the question whether his urinary organs were in a healthy condition, answered "yes;" and in answer to the question "had he ever had any disease of those organs," he answered "no." In each of said applications the assured was asked "how long since you were attended by a physician, and for what disease; give name and residence of such physician, and the name and residence of your usual medical attendant." To this question, in the first application, he answered "Dr. Carpenter has known me two years," and he represented that Dr. Carpenter was his physician, and the same representation is contained in the other two applications. In the second application he answers this question in the same way, and in the third application he answers as follows : "Have none; only consulted Dr. C. H. Carpenter now and then for slight ailments, and taken his prescriptions; Dr. C. H. Carpenter, Geneva, has known me three years."

Defendant, among other defences, set up breaches of warranty and fraudulent misrepresentation and concealment. Upon the trial plaintiff offered the policies in evidence; they were objected to by defendant's counsel upon the ground that the applications were part and parcel thereof, and should be offered in evidence in connection with them. The objection was overruled and defendants counsel duly excepted. The applications were subsequently offered and received in evidence on the part of defendant. Defendant offered in evidence, for the purpose of contradicting the statements in the applications, an application for insurance made by Diefendorf to the Ætna Life Insurance Company, May 17, 1867; this was objected to as incompetent against an assignor, and objection sustained. Defendant also offered for the same purpose proof of declarations and admissions made by Diefendorf some time prior to the applications in question, as to his health and the diseases with which he was affected. These were objected to, excluded, and exception duly taken.

Defendant called several physicians as witnesses who had been consulted professionally by Diefendorf, and who had prescribed for him (one of them was Dr. Carpenter, the physician referred to by Diefendorf in the applications), and offered to prove by them that Diefendorf had for several years prior to the application been afflicted to a very serious degree with chronic diarrhœa, disease of the urinary organs and inflammatory rheumatism, and that these diseases increased upon him to his death; " that the knowledge which they obtained upon the subject was obtained solely from their attendance upon him as physicians, and not from any information received from him." The plaintiff's counsel objected to the offer, on the ground that the same was privileged from disclosure under the statute. The court sustained the objection, and the defendant's counsel duly excepted.

It appeared that several other physicians besides Dr. Carpenter had been consulted by Diefendorf, had treated and prescribed for him.

Defendant's counsel, among other things, asked to go to the jury upon the question, whether the statements of the assured in his applications as to his physician were true or not. The request was denied, and said counsel duly excepted.

The court directed a judgment for plaintiff for the amount of the policies. Exceptions were directed to be heard at first instance at Special Term.

*Henry E. Davies* for the appellant. It was error to allow plaintiff to give in evidence the policies without the applications upon which they were based. (*Larne* v. *Rowland*, 7 Barb., 112; *Rawls* v. *Am. L. Ins. Co.*, 36 id., 365; 27 N. Y., 293; *Murdock* v. *Chenango Mut. Ins. Co.*, 2 id., 210; Bliss on Life Ins. [2d ed.], 91; *Lycoming F. Ins. Co.* v. *Sailer*, 67 Penn., 108; *Dullard* v. *Am. Pop. L. Ins. Co.*, Sup. Ct., Buffalo.) It was competent to contradict, by statements in an application by the insured to another company, those in the applications to defendant. (*Crary* v. *Sprague*, 12 Wend., 41; 1 Phil. Ev., 202; 1 Starkie, 39, 47; *Bullis* v. *Montgomery*, 3

Lans., 260; *Kelsey* v. *Un. L. Ins. Co.*, 1 Big., 76; 35 Conn., 225; *Aveson* v. *Ld. Kinnaird*, 6 East, 188; *Smith* v. *Ætna Ins. Co.*, 49 N. Y., 215; *Yale* v. *Trav. Ac. Ins. Co.*, 2 T. & C., 221.) The court erred in excluding the question put to Dr. Eastman as to what disease he treated the insured for. (2 R S. [Edm. ed.], 422; *People* v. *Gates*, 13 Wend., 324; *Kendall* v. *Gray*, 2 Hilt., 300; *Duchess of Kingston's Case*, 11 How. S. T., 243; 12 id., 643; 1 Green, § 248; *Hewitt* v. *Prime*, 21 Wend., 79; *Johnson* v. *Johnson*, 14 id., 63; 1 Phil. Ev., 108; 1 Starkie, 104: *Crittenden* v. *Strother*, 2 Cr. C. C. R., 464; *People* v. *Sheriff of N. Y.*, 29 Barb., 622; *Allen* v. *Public Admr.*, 1 Brad., 224.) The privilege of preventing the disclosure of a professional communication being personal, the death of the insured prevents its being asserted. (1 Brad., 221; 1 Abb Dig., 22; 14 Wend., 637; 1 Greenl. on Ev., note, 281; Bliss on L. Ins. [2d ed.], 648; *Dilleber* v. *H. L. Ins. Co.*, Ins. L. J., Aug., 1874, 638.) The question would have been competent if the insured had been alive, and no privilege can now be interposed to prevent it. (*Whitney* v. *Barney*, 30 N. Y., 342; *Mitchell's Case*, 12 Abb. Pr., 249; Phil. on Ev. [ed. 1867], 129; *Coutail* v. *Thomas*, 9 B. & C., 288; *In re Bellis*, 38 How. Pr., 79.)

*Geo. F. Danforth* for the respondent. The introduction in evidence of the applications by defendant cured any error there might have been in plaintiff's failure to introduce them. (*Rich* v. *Rich*, 16 Wend., 666.) The declarations of the insured were properly excluded. (*Paige* v *Cagwin*, 7 Hill, 361; *Booth* v. *Sweezey*, 8 N. Y., 276; *Tousley* v. *Barry*, 16 id., 497; *Lincoln* v. *Lincoln*, 12 Gray, 48; *Atkins* v. *Elwell*, 45 N. Y., 757; *Webb* v. *Odell*, 49 id., 583; *Height* v. *People*, 50 id., 392; *McKeon* v. *Lee*, 51 id., 305; *Coleman* v. *People*, 55 id., 85; *Cuyler* v. *McCartney*, 40 id., 226; *State of Iowa* v. *Ross*, 21 Iowa, 469; *Adsit* v. *Wilson*, 7 How. Pr., 71; *Van Buren* v. *Wells*, 19 Wend., 203; *Brown* v. *Lusk*, 4 Yerg., 215; *Enos* v. *Tuttle*, 3 Conn., 250; *Aveson* v. *Kinnard*, 6 East, 188; *Bacon* v. *Inhabs. of Charlton*, 7 Cush., 586; *Ins.*

*Co.* v. *Mosley*, 8 Wal., 397; 56 N. Y., 102; *Ashland* v. *Marlborough*, 99 Mass., 47; *Estes* v. *World Mut. L. Ins. Co.*, 6 Hun, 352; 2 Phil. on Ev. [Ed. ed.], 208; 1 Greenl., §§ 109–111; *Nutting* v. *Paige*, 4 Gray, 584; *Bullis* v. *Montgomery*, 50 N. Y., 358; *Tilson* v. *Terwilliger*, 56 id., 277; *Sugden* v. *Ld. St. Leonard*, L. R., 1 Prob. Div., 240; 1 Stark. on Ev., 52–54.) The evidence of the physicians was properly excluded. (2 R. S., 422, § 73; *Sloan* v. *N. Y. C. R. R.*, 45 N. Y., 128; *Johnson* v. *Johnson*, 4 Paige, 467; 14 Wend., 641; 1 Greenl. on Ev., § 243; 1 Bradf., 378; *Brand* v. *Brand*, 39 How. Pr., 193; *Rogers* v *Lyon*, 64 Barb., 373.)

MILLER, J. Numerous objections were made upon the trial, to the rulings of the judge, in regard to the admission of evidence, and these decisions are properly the first subject for consideration. It is claimed that the court erred in over-ruling the objection of the defendant to the admission of the several policies of insurance, without the applications upon which they were founded and which it is insisted were the basis of and formed a part and parcel of the same. Each of the policies recites that in consideration of the representations made on the application for the same, the insurance is made, but it does not make the application a part thereof or in any other way or manner refer to the application. It is of itself a complete contract without the application and so far as that may be considered as material in affecting or changing its true import, it would more properly belong to the defendant to introduce it in evidence. It is true it is stated in each of the applications, that it is agreed that the particulars required from persons proposing to effect insurances shall form a part of the contract with the company; but as no reference whatever is made to the application in either of the policies, and it is not required to make a complete contract, or to explain the meaning of the same, and as the application properly belonged to and was left in the possession of the company for its benefit, no good reason is apparent why the plaintiff should introduce it as a portion of his testimony.

Neither of them constitute a part of the instruments upon which the action was brought, and the rule that a portion of a writing cannot be received as evidence while a part is withheld is not applicable when the policy itself does not show affirmatively that the application for insurance constituted a part of it. But even although the applications were originally required to be introduced in evidence by the plaintiff, if any error was committed in this respect it was waived by the subsequent introduction of the same by the defendant, and the exception was thus neutralized. (*Rich* v. *Rich*, 16 Wend., 666.)

It is also urged that there was error upon the trial in excluding the declarations of the assured as to the condition of his health, made at various times, and to different persons. One of the offers made was an application of the assured to the Ætna Life Insurance Company for an insurance upon his life, dated May 17, 1867, in which was contained certain answers, statements and representations as to his health, physical condition and other subjects, upon which he made answers in the applications that, before the policies mentioned in the complaint were issued, he was afflicted with certain diseases, contrary to the representations made in the applications presented to the defendant, and that the application to the Ætna Life Insurance Company shows this. The others were the declarations and admissions, which he made as to his diseases and physical condition, to the effect that he was afflicted with some of the diseases referred to in the applications, and was of unsound health. Most of these declarations embraced a period some time prior to the issuing of the policies, and some of them extended beyond that period of time. The various decisions in regard to these statements and declarations may all properly be considered together. The object of the evidence offered was to establish the defence set up, that there was a breach of warranty, by proving the existence of diseases which he had denied he was afflicted with, in his answers to the applications made to the defendant. The action here was brought by an assignee of the policies, and the rule appears

to be well settled in this State that the declarations of the
assignor are not admissible against the assignee. This rule
has been applied to the holder of a negotiable promissory
note (*Paige* v. *Cagwin*, 7 Hill., 361), and the assignee of a
mortgage. (*Booth* v. *Sweezy*, 8 N. Y., 276 ; *Foster* v. *Bears*,
21 id., 247 ; *Schenck* v. *Warner*, 37 Barb., 258.) It is also
held that the admissions of a party insured, made after the
plaintiff obtained the policy, as to his habits, are not compe-
tent. (*Rawls* v. *The Am. Mut. Life Ins. Co.*, 27 N. Y., 282.)
The cases cited do not decide the precise point here raised,
but we think it is fully considered in a recent decision of this
court, in the case of *Swift* v. *The Massachusetts Mutual
Life Ins. Co.* (63 N. Y., 186). In that case proof was
offered of statements made by the insured prior . to the
insurance, and " in immediate reference to his acts, and
to facts in his then bodily condition." One of the grounds .
of the defence was, that the insured concealed the material
fact that he had a scrofulous complaint. There was proof
to show that the assured was lame, that members of his
family had died of scrofula, and of its tendency to become
hereditary, and also tending to show that he had this dis-
ease before and at the time when he died. The declara-
tions were offered in connection with these facts, and it
was held to be a reasonable and conclusive way of showing
a person's knowledge of his bodily condition, to prove declara-
tions concerning it, concurrent with some fact or act in rela-
tion thereto, and that when declarations are made, not too
long before the application and examination, and when a part
of the *res gestœ* of some act or fact, exhibiting a condition of
health which they legitimately tend to explain, they are
admissible to show knowledge in the insured of his physical
condition. The authorities bearing upon the question pre-
sented were discussed and examined, and a review of them is
not now required. It is sufficient to say that, within the
cases to which reference is made in the case last cited, as well
as the principle there laid down, the testimony was not
admissible, and was properly excluded. No act of the insured

was offered in evidence, but mere declarations alone, without
any fact which established his condition of health, or which
constituted a part of the *res gestœ*. This case bears no
analogy to that last cited, and within the latter the ruling here
can be upheld.

The testimony of the physicians, offered upon the trial, we
also think was properly rejected, for the reason that the
information asked for was obtained by the several physicians
while attending the insured, as a patient, in a professional
character, and was therefore privileged within the provision
of a statute of this State. (2 R. S., 406, § 73.) The statute
is very explicit in forbidding a physician from disclosing
any information received by him which is necessary to enable
him to prescribe for a patient under his charge. It is a just
and useful enactment, introduced to give protection to those
who were in charge of physicians from the secrets disclosed to
enable them properly to prescribe for diseases of the patient.
To open the door to the disclosure of secrets revealed on the
sick bed, or when consulting a physician, would destroy con-
fidence between the physician and the patient, and, it is easy
to see, might tend very much to prevent the advantages and
benefits which flow from this confidential relationship. The
point made that there was no evidence that the information
asked for was essential to enable the physician to prescribe is
not well taken, as it must be assumed from the relationship
existing that the information would not have been imparted
except for the purpose of aiding the physician in prescribing
for the patient. Aside, however, from this, the statute in
question, being remedial, should receive a liberal interpretation,
and not be restricted by any technical rule. When it speaks
of information it means not only communications received
from the lips of the patient but such knowledge as may be
acquired from the patient himself, from the statement of
others who may surround him at the time, or from observa-
tion of his appearance and symptoms. Even if the patient
could not speak, or his mental powers were so affected that
he could not accurately state the nature of his disease, the

astute medical observer would readily comprehend his condition. Information thus acquired is clearly within the scope and meaning of the statute. None of the cases cited by the appellant's counsel are in conflict with the interpretation given. In *Kendall* v. *Gray* (2 Hilt. 300), the judge, in his remarks as to the general rule of evidence on the subject, gives full force to the statute, and applies it to physicians while attending patients professionally. The evidence there offered also was not from the physician, and the communication does not appear to have been made the basis of a prescription, and it was held to be competent. In *Hewit* v. *Prince* (21 Wend., 79), it was held that a physician who had been consulted by the defendant as to the means of procuring an abortion was not privileged from testifying. This is not a case in point, and the decision was placed upon the ground that it was doubtful whether the communication to the physician could be considered as made while consulting him professionally, and that the information given was not essential to enable him to prescribe for the patient. Neither of these cases sustain the doctrine contended for by the appellant's counsel.

It is also urged that as to Dr. Carpenter there was a covenant that he was competent and empowered to give information as to the state of health of the insured, and as to other matters, and it was competent for the insured to waive the privilege, and he did so waive it as to Carpenter. He was the medical referee for the purpose of answering inquiries as to the condition of health of the insured, with a view of enabling the defendant to determine the accuracy of his statements in the applications. The offer of evidence made in connection with the testimony of Dr. Carpenter was general in its character, embracing all the physicians who had attended and prescribed for the insured, and not being restricted to proof from him as a medical examiner the question does not arise whether it would have been competent if made in that qualified form.

There is no ground for claiming that the right of objecting

to the disclosure of a privileged communication is strictly personal to the party making it, or to his personal representatives, and that it cannot be available to a third party. No valid reason is shown why an assignee does not stand in the same position in this respect as the original party, and the decease of the latter cannot affect the right of the former to assert this privilege. The authorities cited to uphold a contrary doctrine do not go to the extent claimed with the single exception, perhaps, of *Allen* v. *The Public Administrator* (1 Brad., 221), where the question presented was decided as apparently arising during the progress of the hearing. It is subsequently reported at page 378 of the same volume where the will was admitted to probate, and although the case was heard in the Court of Appeals, it does not appear that the point first decided was considered or determined. How far a distinction may be held to exist where the question arises upon the probate of a will and a case where an assignee has acquired a right, it is not necessary to determine at this time, but the general rule is well settled that the protection which the law gives to communications made in professional confidence does not cease upon the death of the party. The seal which the law fixes upon such communications remains unless removed by the party himself or by his legal representative. (1 Greenl. Ev., § 243.)

It is also urged that section 390 of the Code, by virtue of which a party to an action may examine the adverse party as a witness in the same manner as other witnesses may be examined, abrogates the privilege; and as it would have been competent, if the applicant had been living, to have examined him as a witness no privilege can be interposed by reason of his death. Some cases are cited to sustain this position which have reference to the relationship between attorneys and their clients while both are alive, and the effect of the section cited upon the same. It is not necessary to determine whether these decisions can be upheld as these cases present somewhat of a different question. But even if there be any valid ground for holding that while the parties are alive the Code sweeps

away the common law rule established in the interest of justice and on grounds of public policy that communications made confidentially between an attorney and his client are privileged and should be protected, it by no means necessarily follows that the positive enactment of a statute which established the same rule which previously had no existence in reference to the relationship existing between the physician and his patient is to be regarded as nugatory. The section of the Code and the statute referred to are in entire harmony, and as a repeal by implication is not to be encouraged each of them can be enforced without any inconsistency. It is not to be assumed that the legislature intended to repeal a law which was enacted to prevent the disclosure of information acquired by medical men in a professional capacity and to remove what was previously regarded as a reproach upon the administration of justice without some clear and emphatic indication to that effect. (*People* v. *Street,* 3 Park. Cr., 673 ; 3 R. S. [2d ed.], 737.) This is wanting and we think that the statute remains in full force and has not been affected by the provision of the Code cited.

There was no error in the refusal of the judge to dismiss the complaint or to direct a verdict in favor of the defendant. A more serious question arises as to the refusal of the judge to allow the defendant to go to the jury as requested or to present any questions to the jury. On each of the applications for insurance, the applicant was asked the following questions : " How long since you were attended by any physician ? For what diseases ? Give name and residence of your usual medical attendant ? " On the first and second applications he answered " Dr. Carpenter has known me two years." Upon the third application he answered " have none ; only consulted Dr. C. H. Carpenter now and then for slight ailments and taken his prescriptions ; C. H. Carpenter, Geneva, has known me three years." In regard to the answers made to the questions put upon the first and second applications it is quite obvious that the answers were not in response to the same, but as no objection was taken on this account, and no further

answer required at the time, it is fair to assume that it was satisfactory and there was a waiver of any additional answer. (*Fitch* v. *An. P. Life Ins. Co.*, 59 N. Y., 573; *Rawls* v. *Am. L. Ins. Co.*, 27 id., 283.) As to the answers made to the question put upon the third application, the statement made that he had only consulted Dr. Carpenter was perhaps calculated to convey the impression that he had no other physician, and it is by no means entirely clear that such was the fact. It is proven that he consulted Dr. Eastman in 1863, who made prescriptions for him, then Dr. Avery also prepared medicines for him for a week or ten days after he left Dr. Eastman in 1864 or 1866, and also treated him in 1868. Dr. Carpenter testifies that he treated him in 1866 and 1870. He cannot state as to 1868, although he had previously sworn that he had given him prescriptions during that year. Dr. Picot testifies that he prescribed for the insured in 1868. He gave him prescriptions to be used at that time, but did not attend him in any sickness, and he gave him prescriptions once in a while for two years and a-half afterwards. These were a month or two apart and given on the street. It is apparent that the testimony is not very explicit as to the correctness of the answer, and as the evidence stood it was a fair question for the jury to determine, whether the assured could be charged with an omission to give such information as the interrogatories were intended to elicit, as constituted a fraudulent suppression of the truth and vitiated the policy. Under the circumstances the defendant's counsel should have been allowed to go to the jury upon the requests made as to the suppression and fraud upon the third application in respect to the employment of a physician.

For the error in refusing to grant this request of the defendant's counsel the judgment must be reversed and a new trial granted, with costs to abide the event.

All concur; CHURCH, Ch. J., in result.

FOLGER and RAPALLO, JJ., not sitting.

Judgment reversed.