The Penn Mutual Life Insurance Company v. Wiler.

---

No. 10,959.

THE PENN MUTUAL LIFE INSURANCE COMPANY v. WILER.

LIFE INSURANCE.—*Application.*—*Pleading.*—*Complaint.*—*Exhibit.*—The application for a policy of life insurance need not be filed with the complaint in an action on the policy.

SAME.—*Disease.*—*Answer.*—*Demurrer.*—Where an answer to a complaint on a policy of life insurance avers that the insured answered "No" to the question in the application, "Has any near relative been afflicted with or died of consumption," etc., whereas he had had near relatives who were afflicted with and had died of such disease, but does not name them or state the degree of relationship, it is insufficient on demurrer, as stating a conclusion of law.

SAME.—*Contract of Insurance, How Construed.*—*Interrogatory to Applicant.*—*Ambiguity.*—A contract of life insurance should be liberally construed,.

The Penn Mutual Life Insurance Company *v.* Wiler.

with a view to effectuate its purpose, and, if there be any ambiguity in an interrogatory propounded to the applicant, or if it be capable of more than one answer, it should be construed most strongly against the insurer, and most favorably to the insured, in whose favor all doubt should be resolved.

SAME.—*Partial Answer.— Warranty.—General Provisions of Application.*—If the answer given by the applicant to an interrogatory be in itself true, and there is no intentional suppression or omission or fraud on his part, though the question be such as to suggest a fuller·and more detailed answer, yet, if the insurer be content with· the partial answer, he can not claim a warranty extending beyond such partial answer; nor can general provisions following the questions and answers in the application make this otherwise.

SAME.—*Evidence. —Physician. —Privileged Communication. — Waiver.—Beneficiary.*—Under section 497, R. S. 1881, relating to privileged communications, a physician can not, in an action·by the beneficiary on the policy, when objection is made by the plaintiff, testify as to his professional ·attendance on the insured before the date of his application for insur-·ance; this privilege, however, creates no absolute incompetency, and it may be claimed or waived by the beneficiary, but the production in evidence, by such beneficiary, of facts learned in a professional capacity by one physician, is not a waiver of the right to object to the divulging of other confidential communications by other physicians.

SAME.—*Declarations of Insured.—Res Gestæ.—Hearsay.—Breach of Warranty.*—The declarations of the insured, made some time previous to his application for insurance, and not shown to have been parts of the *res gestæ* of any acts or facts indicating a diseased condition of the insured, which the declarations tend to explain, can not prove or tend to prove the fact of his ill health, but constitute mere hearsay, and, as such, are not admissible against the beneficiary, to show a breach of warranty.

SAME.—*Burden of Proof.*—Where the defendant, in such case, pleads in answer that the insured made an untrue answer to a certain question contained in the application, the burden is on him to establish such fact.

From the Allen Superior Court.

*R. S. Taylor*, for appellant.

*W. H. Coombs, R. C. Bell, S. G. Morris* and *J. F. McHugh*, for appellee.

BLACK, C.—This was an action brought upon a policy of insurance on the life of Solomon Wiler, wherein the appellant promised and agreed to and with said assured, his executors,

administrators and assigns, to pay the sum insured to his wife, the appellee, her executors, administrators or assigns within sixty days after due notice and proof of his death.

There was an answer of eight paragraphs, the first being a general denial. Demurrers to the fourth, sixth, seventh and eighth paragraphs were sustained.

The plaintiff replied, and a trial by jury resulted in a verdict for the plaintiff, on which judgment was rendered, a motion for a new trial having been overruled.

The appellant in argument here has objected to the complaint, on the ground that the policy made the application therefor a part of the contract, and that, therefore, the application should have been set out with the complaint. We will not take space to fully state or to discuss the question suggested by the appellee as to whether the assignment of errors presents for decision the question involved in this objection to the complaint, but we dispose of the subject by saying that it may now be regarded as an established rule in this State that in such a case the application, or a copy thereof, need not be filed with the complaint. *Continental Life Ins. Co.* v. *Kessler*, 84 Ind. 310.

In each paragraph of the answer except the first, it was alleged, in substance, that prior to the execution of the policy said Solomon Wiler executed to the defendant an application in writing and print signed by him, of which a copy was made an exhibit; that the policy was issued in pursuance of, and was based upon, said application; that it was expressly stipulated and provided in the policy and in the application, that the latter should and did constitute part of the contract of insurance, and that all the statements and declarations thereof should be regarded as warranties and material, and that if the same should be in any respect untrue, the policy should be null and void. Each of said special paragraphs alleged that the statements and declarations contained in said application were false and untrue in certain respects stated.

The provision of the policy thus referred to by the answers

was as follows: "And it is also understood and agreed to be the true intent and meaning hereof, that if the application for insurance made to the said company by said Solomon Wiler, and bearing date the 1st day of November, 1879, a true copy whereof is placed on the back of this policy, and upon faith in the truth and accuracy whereof this agreement is made, which application is hereby made part of this contract, and the statements and declarations of which are to be mutually regarded as warranties and material, shall be found in any respect untrue, then, and in such case, this policy shall be null and void."

Following the questions and answers in said application were certain provisions whereby it was covenanted and agreed "that this declaration, and the above mentioned answers and proposal contained in the foregoing application, whether written by his own hand or not, every person whose name is hereto subscribed adopts as his own and warrants to be full, complete and true, and to be the only statements given to the company in reply to its inquiries which shall be the basis of the contract between the undersigned and" said company. And it was further covenanted and agreed, "that if there has been any suppression or omission of any fact by the party making this application, or if any untrue or fraudulent allegation be contained herein or in the foregoing answers and proposal, all moneys which shall have been paid on account of such insurance shall be forfeited to the said company, and the policy of insurance made on the faith of this declaration and of the above answers and proposal shall become null and void and of no effect."

The second and third paragraphs of answer alleged the making of untrue statements by the assured in said application, in answer to certain questions as to whether he had suffered from or been subject to divers physical ailments.

In the fifth paragraph, it was shown, among other things, that in said application, in answer to the question: "How many full brothers has the party had?" the assured an-

swered, "eight;" and that under the word "living," in a column immediately after said question, he had answered "six." And it was alleged that, in truth, he had not had eight full brothers, six of whom were living.

In the fourth paragraph of answer, it was alleged, by way of showing an untrue statement in the application, "that in answer to question No. 13 of said application, which is as follows: 'Has any near relative been afflicted with or died of consumption, cancer, disease of the heart, or any scrofulous disease, apoplexy, insanity, gout or disease of the kidneys?' the said Solomon Wiler answered, 'No;' whereas, in fact, the said Solomon Wiler had near relatives who were afflicted with and died of consumption before the signing and making of said application for insurance."

It is agreed by counsel for both parties, that the demurrer to this paragraph was sustained for the reason that the pleading did not name the near relatives alleged to have been afflicted with and to have died of consumption, or state the degree of their relationship to the life insured.

We think the court below based its ruling upon a sufficient reason. Whether any particular person was a near relative within the meaning of the contract, was a question of law, and the pleading stated a conclusion of law.

Among the interrogatories and answers in the application were the following: Questions. "18. A. How long since he was attended by a physician or professionally consulted one? B. For what disease? C. Give the name and residence of the physician who attended him. D. Give the name and residence of his usual medical adviser or family physician, to whom he refers for a certificate." Answers. "A. About one year ago. B. Bad cold. C. Dr. Isaac Rosenthal, Fort Wayne, Ind. D. Dr. Isaac Rosenthal, Fort Wayne, Ind."

The sixth, seventh and eighth paragraphs of the answer related to these interrogatories and answers. The sixth paragraph, after the inducement above stated, common to all the special paragraphs, set out said questions and answers, and al-

leged that the insured had been attended by and had professionally consulted Dr. George T. Bruebach, a practising physician, on the 22d day of May, 1879, and on other subsequent days, for diseases other and more serious than a bad cold, to wit, for bronchial asthma and bronchial catarrh, all which consultations and attendance were within less than six months before the making of said application, which was on the 1st of November, 1879.

The seventh paragraph was like the sixth, except that it mentioned as the physicians whom the insured had professionally consulted, and by whom he had been attended, Dr. Isaac Rosenthal and three others named, and stated that the diseases for which they had treated him were asthma, bronchitis, consumption and other diseases.

The eighth paragraph, besides said inducement and said extract from the application, alleged that it was specially covenanted and agreed by said Solomon Wiler in said application, and as part of said contract of insurance, that he would and did warrant all the answers in said application contained to be full, complete and true, and that if there had been any suppression or omission of any fact in said answers, then said policy of insurance should be void and of no effect.

The provisions of the application thus referred to were the general provisions set out therein after the questions and answers.

The eighth paragraph contained averments like those of the seventh, and further alleged, that while it was true that said Dr. Isaac Rosenthal, about a year before the making of said application, attended the applicant for a bad cold, yet he, by his said answers, suppressed and omitted to state the more important and material facts that he had professionally consulted and been attended by said Dr. Isaac Rosenthal and said other physicians, for fever, asthma, bronchitis and consumption, so that said answer was not full and complete, without omission or suppression, as it was consented, agreed, and

warranted it should be by the terms of policy and said application. " Wherefore the defendant says that by reason of said breach of covenants and warranty in said policy and application contained, the said policy of insurance has become and is wholly null and void."

We think that there was no error in sustaining the demurrers to these answers. It is not shown that any of the statements made by the applicant were in themselves untrue.

The contract of insurance should be liberally construed, with a view to effectuate its purpose. The language of the policy, and of the interrogatories and provisions of the application, is carefully and deliberately prearranged by the insurer; in its preparation the insured has no part. Whatever there may be in the language so prepared by the insurer, which has any tendency to defeat the main purpose of the contract, should be strictly construed against the insurer. If there be any ambiguity in an interrogatory propounded to the applicant, or it be capable of more than one answer, it should be construed most strongly against the insurer, and most favorably to the insured, in whose favor all doubt should be resolved.

If the answer given to any interrogatory be in itself true, though the question be such as to suggest a fuller and more detailed answer, yet, if the insurer be content with the partial answer, he can not claim a warranty extending beyond the partial answer. Warranties in insurance policies are always strictly construed.

If the answer to any of the many questions propounded to the applicant was in itself untrue, there was a breach of warranty. If all the answers were true, there was no breach of warranty, and the general provision following the questions and answers in the application could not make this otherwise. We think it would not be understood by the applicant from those general provisions, that if all his answers were true, and honestly made, the policy should be void for an unintentional omission of some fact without which

some answer was not full. If the answers were true in themselves, and there was no intentional suppression or omission, no fraud on his part, his answers should not be held to avoid the policy. It was not alleged in any of the paragraphs of answer that there was an intentional omission or suppression, or that any answer in the application was fraudulently incomplete. See *Edington* v. *Mutual Life Ins. Co.*, 67 N. Y. 185; *Dilleber* v. *Home Life Ins. Co.*, 69 N. Y. 256; *John Hancock Mutual Life Ins. Co.* v. *Daly*, 65 Ind. 6; May Ins., section 200.

On the trial, the defendant introduced certain physicians as witnesses, and offered to prove by them that at various times, before the date of the application for insurance, when they had professionally attended the insured, he was suffering from asthma and other diseases. Upon óbjections made by the plaintiff, such evidence was excluded. The objections were made and sustained on the ground that the facts which it was thus sought to prove were within the provision of the statute in relation to matter communicated to physicians by their patients. Our statute upon this subject has undergone some changes at various times. The form in which it existed at the time of the trial of this cause is found in section 497, R. S. 1881, as follows: " The following persons shall not be competent witnesses: * * * Physicians, as to matter communicated to them, as such, by patients, in the course of their professional business, or advice given in such cases." It does not devolve upon us in this connection, we scarcely need to say, to adopt or reject or to formulate a rule of evidence. A statute which the Legislature had authority to enact is the rule, and it only belongs to us to interpret it in particular cases. As to the wisdom of the rule of the common law protecting confidence between attorney and client, there has been general agreement among judges. Mr. Appleton, in his Rules of Evidence, in advocating its abolishment as a needed reform, found it " difficult to perceive, wherein consists the difference between the confidence which exists be-

tween physician and patient," and "that subsisting between the client and attorney, and why different rules should obtain in the last from those adopted in the former cases." Appleton Ev., p. 163.

While the modern statutory changes in this and other States upon the subject of witnesses have not included the abolishment of the protection of confidences between attorney and client, which in this State are expressly protected by statute, they have extended what was evidently intended to be a like protection to confidences between physician and patient.

Under our statute, when by its terms it provided that physicians were not competent witnesses "as to matters confided to them in the course of their profession, * * * unless with the consent of the party making such confidential communication," it was held by this court, in agreement with authorities elsewhere, that the evidence which might be excluded was not only such as related to what the patient told the medical witness, whether under injunction of secrecy or otherwise, but also such as related to what the physician learned by observation or by examination of the patient, without regard to the character of the supposed ailment. *Masonic Mutual Benefit Ass'n* v. *Beck*, 77 Ind. 203.

The same construction should be given to the statute in its present form. It is plain, that without such a construction the statute would be of but little practical efficacy for the purpose intended in its enactment. That the present statute should be so construed is, in effect, held in *Excelsior Mutual Aid Ass'n, etc.*, v. *Riddle*, 91 Ind. 84.

The purpose of the statute is not the suppression of truth needed for reaching correct results in litigation, though this may sometimes incidentally occur (as it may also in other instances of exclusion on the ground of wise policy), but the purpose is the promotion and protection of confidence of a certain kind, the inviolability of which is deemed of more importance than the results sought through compulsory disclosure in a court of justice. Notwithstanding the abso-

lutely prohibitory form of our present statute, we think it confers a privilege which the patient, for whose benefit the provision is made, may claim or waive. It gives no right to the physician to refuse to testify, and creates no absolute incompetency. To hold otherwise would result in many cases in obstructing justice without subserving the purpose of the statute. In this opinion, we are in agreement with the view taken by other courts of enactments upon this subject in form absolutely prohibitory. *Johnson* v. *Johnson,* 14 Wend. 637; *Grand Rapids, etc., R. R. Co.* v. *Martin,* 41 Mich. 667; *Scripps* v. *Foster,* 41 Mich. 742; *Allen* v. *Public Adm'r,* 1 Bradf. 221; *People* v. *Stout,* 3 Parker Cr. 670. And in a case like the one at bår, *Excelsior Mutual Aid Ass'n* v. *Riddle, supra,* in considering the exclusion of testimony of an attending physician, upon objection based upon the ground that it was privileged, this court approved the rejection of the testimony, and said that, so far as the question under consideration was concerned, there was no substantial difference between the statute of 1881 and the former law under which *Masonic Mutual Benefit Ass'n* v. *Beck, supra,* was decided. As in the case of attorney and client, the inviolability of the confidence, the right of objecting to the disclosure of matter communicated to a physician as such by his patient, does not cease with the death of the latter. This view is reasonable, and it is supported by the decided cases. We do not deem it necessary or proper for us to attempt in this opinion to indicate what should be the effect of this statute in other supposable cases which may come up to this court, and, in view of previous decisions here, we have been induced to say thus much upon the subject only because of the earnest argument of the learned counsel for the appellant. See, however, *Allen* v. *Public Adm'r, supra; Staunton* v. *Parker,* 19 Hun, 55; *Pierson* v. *People,* 79 N. Y. 424; *Fraser* v. *Jennison,* 42 Mich. 206, 224. Not without the careful consideration asked by counsel, we are constrained to interpret the statute as giving to a person, having such a rela-

tion to the deceased patient and a contract made by him as that sustained by the appellee, the right in a suit by her on the contract, either to waive the statute or to object on the ground thereof. It may be said that in such case she represents the patient for such purpose. The statute is remedial and should be liberally construed with a constant view to its purpose. Confining our decision to the case before us, we are satisfied that a proper application of the statute was made in *Masonic Mutual Benefit Ass'n* v. *Beck, supra,* and *Excelsior Mutual Aid Ass'n* v. *Riddle, supra.* Besides the citations in the former case, see *Gartside* v. *Connecticut Mutual Life Ins. Co.,* 16 Cent. L. J. 253.

The plaintiff, by way of rebuttal, introduced as a witness the physician who, on behalf of the defendant as medical examiner, had examined the insured for this insurance, and elicited testimony from him tending to prove that the insured was in good health at the time of the application. Afterwards the defendant recalled the physicians before introduced by the defendant, and again sought from them the evidence which had been excluded as above stated. Upon objection, their testimony was again excluded. This offer was made upon the theory that the plaintiff, by having herself introduced the testimony of one physician, had waived her right to object to the testimony of other physicians. This theory is not well founded. If the plaintiff's examination of said medical examiner as a witness could be regarded as a waiver of a privilege, the consent of the patient, or of one entitled to stand as his representative, to the production in evidence of facts learned in a professional capacity by one physician, could not be construed as consent to the divulging of other confidential communications to other physicians.

The court, upon the plaintiff's objection, excluded offered testimony of one Carney and of one Craw, witnesses for the defendant, the offered evidence having relation to declarations of the insured. The testimony of Carney was contained in his deposition. He deposed that at some time, not definitely

stated, but which was more than two years and a half before the application, the insured used the words, " This damned asthma." This witness testified that he did not know of whom the insured was speaking.

The witness Craw had testified that he was in the employment of the insured from about the 1st of February, 1877, until the 15th of December, 1878.   The defendant offered to prove by him, " that Mr. Wiler, on different occasions, during the time named during which the witness was in his employ, and before this application was made to the company for a policy of insurance, stated to the witness that he had the asthma, and suffered from it."

It was not shown, and it was not proposed to show, in either instance, on what occasion or under what circumstances the words were used, and no accompanying fact was shown or offered in evidence.

The policy, during the life of the insured, after its execution, as well as after his death, was a chose in action owned by the plaintiff as her separate property.   Without her joining, her husband could not assign it.   *Pence* v. *Makepeace*, 65 Ind. 345 ;  *Godfrey* v. *Wilson*, 70 Ind. 50.

The declarations of the insured, uttered at such long intervals before the making of the application, and not shown to have been parts of the *res gestœ* of any acts or facts indicating a diseased condition of the insured which the declarations tended to explain, could not prove, or tend to prove, the fact of his ill health, but constituted mere hearsay, and as such were not admissible against the plaintiff to show a breach of warranty.   *Swift* v. *Mass. Mutual Life Ins. Co.*, 63 N. Y. 186 ;  *Edington* v. *Mutual Life Ins. Co.*, 67 N. Y. 185;  *Dilleber* v. *Home Life Ins. Co., supra; Fraternal Mutual Life Ins. Co.* v. *Applegate*, 7 Ohio St. 292 ;  *Hurd* v. *Masonic Mutual Benefit Society*, 6 Ins. L. J. 792;  *Mobile Life Ins. Co.* v. *Morris*, 3 Lea, 101 ; May Ins., section 214 ; Bliss L. Ins., section 371, *et seq.*

Amongst the questions and answers in the application were

those mentioned above as being shown in the fifth paragraph of answer.

It is insisted that the verdict was contrary to the evidence, especially, that the evidence proved that the applicant had had only seven full brothers.

The attention of the court and that of the jury were given particularly to this question. The court instructed the jury that if it appeared upon the application that the applicant stated therein that he had had eight full brothers, and if the jury believed from the evidence that he had had, in fact, only seven full brothers, it would be their duty to find for the defendant. The attention of the jury was further directed to this matter by an interrogatory, in answer to which they found specially that, at the making of the application, the applicant had had eight full brothers. The court's attention was again called to the matter by the motion for a new trial, assigning as one of the causes the insufficiency of the evidence. The burden of proof as to this question was upon the appellant.

It is manifest, that to justify this court in setting aside the conclusion thus reached in the trial court, the evidence should be such as to establish the appellant's impeachment of the truth of the applicant's answer in question, without any contradiction or any uncertainty whatever.

As the evidence appears upon the record, considered in all its parts, it seems to us that the jury might well have found from it that the applicant had had only seven full brothers. But the jury were to proceed upon the assumption that the applicant told the truth, until the contrary was proved to their satisfaction. It was for the jury to consider the appearance and manner of the witnesses, and to determine the trustworthiness of their memories. Two witnesses, a brother and a sister of the applicant, testified upon this question. Their testimony upon paper shows that they were somewhat confused in their memories, and the testimony of neither was in all respects consistent in itself.

As requested by counsel for the appellant, the evidence upon this question has been examined by all of us, and, after careful consideration, it has been determined that we ought not to interfere with the conclusion reached in the trial court.

PER CURIAM.—It is ordered, upon the foregoing opinion, that the judgment be affirmed, at the costs of the appellant.

