CLARA L. DOTY, Respondent, *v.* THE NEW YORK STATE MUTUAL BENEFIT ASSOCIATION OF SYRACUSE, NEW YORK, Appellant.

*Supreme Court, Fourth Department, General Term, February* 15, 1890.

1. *Insurance. Action.*—An action at law can be maintained upon a certificate of membership in a mutual benefit association, without recourse to the writ of mandamus.
2. *Trial. Charge.*—The court, after it has fully instructed the jury upon all the questions involved on the trial, is not required, upon the request of the defendant, to take up each particular disease or ailment, upon which a defense is based, and charge in regard to it, both as to warranty and concealment.
3. *Same. Submission.*—Where, in such action, there is a conflict of evidence upon the question whether the insured had had the diseases alleged in the answer, the question must be submitted to the jury.

Appeal from a judgment entered in Onondaga county on

the verdict of a jury, and from an order denying the defendant's motion for a new trial made upon the minutes of the trial judge.

*T. K. Fuller*, for appellant.

*Isaac D. Garfield*, for respondent.

MARTIN, J.—The recovery in this action was founded on a certificate of membership issued by the defendant on the 8th day of September, 1884.   It was in the nature of a policy of insurance upon the life of Chauncey E. Doty and payable on his death to the plaintiff, who was his wife.

None of the allegations of the complaint were controverted by the answer and therefore were taken as true.   The only issues in the case were based on the allegations in the answer that Chauncey E. Doty made false statements in his application for such certificate of insurance, and that he concealed facts in relation to his health which tended to deceive the defendant.

Among others the following questions were contained in the application and answered by the applicant as follows : " Has the applicant had spitting of blood ?   No.   Has the applicant had cough ?   No.   Has the applicant had hemorrhage of any kind ?   No.   Has the applicant had bronchitis ?   No.   Has the applicant ever had any severe injury or illness ?   No.   Is the applicant subject to habitual cough or expectoration, difficulty of breathing, or palpitation of the heart ?   No.   Is the applicant now in good health ?   Yes.   And has general health been good ?   Yes.   Has applicant ever been under medical or surgical treatment for any affections not specified above ?   No."

The defendant alleged in its answer that the applicant's answers to the foregoing questions were untrue, in that prior to the time when said application was signed and such contract of insurance made he had had spitting of blood, cough,

hemorrhage, bronchitis, severe illness resulting from hemorrhage, was subject to habitual cough, expectoration and difficulty of breathing, was not in good health, his general health had not been good for a long time prior to such application, and said applicant had been under medical treatment for affections not specified in his medical examination, to wit: for chronic diarrhœa, with which he had been afflicted for seventeen years.

It was also alleged therein that said assured when he made such application concealed facts tending to deceive the defendant as follows: that he concealed the fact that he had been afflicted with chronic diarrhœa for about seventeen years, and that he had been attacked with hemorrhage about June, 1883, and was laid up therefrom three or four months, and was treated therefor by a physician other than those named in his medical examination, and concealed the fact that his health had been so seriously impaired that he had been unable to attend to his business, and that he had a hacking cough for a long period, and that by reason of ill health he had been unable to work.

On the trial the defendant called several witnesses whose testimony tended to show that before such application was made the applicant had had " a dry hacking cough," was " short-breathed," that he " looked pale and weak and was tremulous," that in 1862, while in the military service of the United States, he was in a hospital for two or three weeks, and that he had some trouble with his kidneys. The defendant also proved the plaintiff's oral or written admissions to the effect that in May, 1884, her husband spat blood, that in November, 1884, his health had " entirely given out," and that in February, 1885, she stated that during his service in the army he contracted chronic diarrhœa, which was followed by epileptic fits, which resulted in general debility and caused his death. The defendant was also permitted to prove the declarations of the plaintiff's husband that he had had chronic diarrhœa, epileptic fits, bilious colic, mercurial poisoning and pneumonia.

On the other hand, the plaintiff testified that she made none of the oral admissions testified to by the witnesses for the defendant; that she did not know the contents of the paper signed by her containing the written admissions introduced by the defendant which was made in February, 1885, after her husband's death; that the statement in November, 1884, was made after the certificate in question was issued and during the last sickness of her husband, and related to his condition at that time.

She also testified, in substance, that she lived with her husband and occupied the same room with him from 1868 until the time of his death; that she never knew of his having chronic diarrhœa, of his spitting blood or having a cough, or bleeding at the lungs ; that his health was good; and he attended to his business substantially all the time, except when he had some slight indisposition, until the occasion of his last sickness. She also called several other witnesses, who testified that they had known her husband in his lifetime, and had been with him more or less, and that they had never observed that he had a cough, was short-breathed or that he had indications of any illness or disease. This evidence, if believed, tended to show quite conclusively that the allegations of the defendant's answer were wholly untrue.

The question whether the plaintiff's husband had had any of the alleged diseases or ailments, and therefore whether he had made any of the false statements or concealed any of the matters alleged in the answer, was submitted to the jury, with the instruction that if any of the statements made in the application were untrue, that fact " voided " the policy and relieved the defendant from any liability by reason of its issue. Upon the evidence and under such instructions the jury found for the plaintiff. We are asked on this appeal to reverse the decision of the jury on the ground that the verdict was not sustained by the evidence.

It seems that many, if not all, the declarations made by

the plaintiff's husband were inadmissible for the purpose of proving that he had had the diseases which in his application he denied. They may, however, have been admissible to show that he had knowledge of the existence of such diseases as were otherwise proved. Swift *v.* Massachusetts L. Ins. Co., 63 N. Y. 186 ; Edington *v.* Mut. L. Ins. Co. of N. Y., 67 Id. 185; Dilleber *v.* Home L. Ins. Co., 69 Id. 256. But be that as it may, still there was a conflict in the evidence upon the questions whether the plaintiff's husband had had the diseases and ailments alleged in the answer, and the court would not have been justified in refusing to submit that question to the jury. . Nor do we think the verdict so manifestly against the weight of evidence as to justify us in setting it aside for that reason.

The appellant also contends that the court erred in refusing to dismiss this action on the ground that it could not be maintained in its present form, but that the plaintiff's remedy was by *mandamus*. It has been several times held by this court that an action in form like the present could be maintained upon such a certificate. Freeman *v.* National Benefit Society, 42 Hun, 252 ; Fulmer *v.* Union Mut. Ass'n, 12 Id. 347, 349 ; Hankinson *v.* Page, 12 Civ. Pro. 279, 288; O'Brien *v.* Home Ben. Soc'y of N. Y., 21 N. Y. State Rep. 640, 643 ; affirmed, 27 Id. 326 ; Peck *v.* Equitable Accident Ass'n, 52 Hun, 255. Moreover, in the case at bar the plaintiff alleged that she demanded of the defendant that it pay her the amount to which she was entitled by said certificate, which she was informed and believed amounted to the full sum of $3,000. This allegation, not having been denied, must be taken as true. It must, we think, be regarded as an admission by the pleadings that there was that sum due on such certificate, unless it was invalid for the reasons stated in the defendant's answer.

The appellant asked the court to charge as follows : " If the jury find from the evidence that Chauncey E. Doty had had chronic diarrhœa, as stated by him in his application for

pension and in his special examination before Special Examiner Patterson in June, 1884, the plaintiff cannot recover. The court: " The jury are men of common sense. While a surgeon or physician or anybody else may swear to a given state of facts, if those facts, so sworn to, do not commend themselves to the judgment of a jury of intelligent men, they will not be controlled by them."

The court had previously charged as follows: " By the terms of this agreement between the company and the applicant, his application to become a member of this company and his right to this certificate was made a part and parcel of that agreement, and between the parties it was stipulated that if any answer to any question which was put to Chauncey Doty in that application was untrue, that fact voided the policy and relieved the company from any liability by reason of its issue.

" The law is well settled, as has been suggested in your presence, that in contracts of this nature, where the statement and representation in form and in character are a warranty as to their truth, that the falsity of any one statement thus made, whether the statement is a material one or not, or whether it at all affects the liability of the parties beyond the fact that it is untrue, vitiates the policy and discharges the company from its liability on it. To this rule I suggest another here which you will bear to your jury room, that it is provided that if there was a concealment of any material fact by the assured that he ought to have disclosed to the party issuing the policy, that that shall vitiate the policy. The difference is, that under a warranty it is not important whether the untrue statement is material. In the concealment, the fact must be material in order to relieve the party. *   *   * If you find the statements by Doty to the assurers in the application were untrue, and that this certificate was issued on the faith of those statements, upon that finding you have but one duty to perform. That duty is to find a verdict in favor of the defendant, thus declaring them not to be liable upon this paper."

If what was said by the court should be regarded as a refusal to charge as requested, still we are of the opinion that the court, having charged fully upon that question, was not required to charge the proposition as requested by the appellant's counsel. He had already in effect charged the jury that if they found that the applicant had any of the diseases mentioned in the defendant's answer, or that he had had any severe illness or injury, was not then in good health, or his general health had not been good, or had concealed any of the facts mentioned therein, that the certificate was void, and the plaintiff could not recover. We think after the court had thus fully instructed the jury upon all the questions involved on the trial it was not required upon the request of the defendant to take up each particular disease or ailment and charge in regard to it, both as to warranty and concealment. We think it was not error to decline to charge as requested, and the judgment should not be reversed upon that ground.

The appellant also requested the court to charge, " that if the jury find from the evidence that the applicant concealed the fact which he testified to, that he had suffered from mercurial poisoning as stated in his testimony, such concealment was the concealment of a material fact and voids the policy or certificate." To this request the court replied : " Gentlemen, you have heard the different diseases which it is alleged were concealed. It has been read to you from the answer. I will charge you as to those diseases mentioned in the answer, except the concealment in relation to them, is not in the case." This was excepted to by the defendant. It will be observed that there is no allegation in the answer alleging the concealment of mercurial poisoning. Moreover, it is extremely doubtful, to say the least, whether there is any evidence in the case showing that the applicant had suffered from mercurial poisoning. There is none, unless his admissions made in seeking to obtain a pension are evidence against the plaintiff in this action. Nor do we

think it can be held that the court refused to charge as requested, as the request was substantially complied with.

The appellant also claims that the jury were improperly influenced by the remarks of the court during the trial of this action; that such remarks were calculated to, and undoubtedly did, bias the jury and prejudice them against the defendant. An examination of the appeal book in this case fails to disclose the facts as claimed by the appellant. We have been unable to find any unjustified statement made by the court which would tend to prejudice the jury in the case against the defendant.

The appellant also contends that there are sixty-five rulings made by the court on the admission or rejection of evidence which were erroneous. It is impracticable to discuss each of those rulings separately. We must, therefore, content ourselves by stating that we have examined each of the rulings in the case, and have found none that disclose error or would justify a reversal of the judgment. We think the judgment should be affirmed.

Judgment and order affirmed, with costs.

HARDIN, P. J., and MERWIN, J., concur.